Marjorie B. DAUGHERTY, Administratrix of the Estate of John C. Burton, Deceased, and Marjorie B. Daugherty, Individually, Charles Hugh Burton II, and Marsha Burton, his wife, Mary Elizabeth Hays and William M. Hays, her husband, and Anna Ruth Holmes, Appellants,

v.

Carrie B. BREEDING, Appellee.

Court of Appeals of Kentucky.

June 24, 1977.

Daniel A. Canning, Somerset, for appellants.

Bruce Phillips, Randall Bertram, Monticello, for appellee.

Before MARTIN, Chief Judge, and GANT and PARK, Judges.

PARK, Judge.

This case involves the ownership of a stagecoach, which is claimed to be the last stagecoach operated east of the Mississippi River. The plaintiff-appellee, Carrie B. Breeding, asserts that she is the owner of an undivided five-twelfths interest in the stagecoach. The defendants-appellants are the ·ersonal representatives and heirs of John C. Burton, the brother of Carrie B. Breeding. The appellants contend that the stagecoach was owned solely by John C. Burton at the time of his death. In a carefully considered opinion containing detailed findings of fact and conclusions of law, the trial court adjudged that Carrie B. Breeding owned an undivided five-twelfths interest in the stagecoach, that the heirs of John C. Burton owned an undivided five-twelfths interest, and that the remaining two-twelfths interest was owned by the heirs of John Milton Burton, a first cousin of John C. Burton and Carrie Breeding.

C. H. Burton, the father of Carrie B. Breeding, and John C. Burton, operated a stagecoach line between Monticello and Burnside, Kentucky, for many years. C. H. Burton died intestate in December 1923, survived by his widow, Anna, and his two children Carrie Breeding and John C. Burton. The parties stipulated that C. H. Burton was the owner of the stagecoach at the time of his death. The widow, Anna Burton, qualified as administratrix of the estate of C. H. Burton. However, no mention of the stagecoach was made in the final settlement filed by Anna as administratrix of the estate of C. H. Burton.

Following the death of C. H. Burton, the stagecoach was stored in a barn immediately behind the family residence in Monticello which was occupied by Anna until her death in 1954. Sometime during the early 1930's, the stagecoach was exhibited by John C. Burton at a bridge dedication in Burnside. When the stagecoach was returned to Monticello, it was placed in a building which John C. Burton operated a garage. This garage building was situated adjacent to the family residence occupied by Anna Burton. The stagecoach remained in the ga-

rage building until the death of John C. Burton in May 1973. With respect to John C. Burton's possession of the stagecoach, the trial court made the following findings:

"It appears from the evidence that the Burton family took pride in the ownership of this stage coach and it was kept in this garage building by the said John C. Burton in a place where the public generally could see and admire it when visiting Mr. Burton's garage. It further appears that he took care of this coach and maintained it in a good condition over all these years.

\* \* \* \* \* \*

"It appears from the evidence that the decedent, John C. Burton had kept this coach which was a family heirloom stored in his garage for the benefit of [the family], for the pleasure he got out of exhibiting and displaying same in his place of business and for no other reason. There is no evidence that he did anything other than store this coach, nor is there any evidence that he charged for this or requested to be paid."

These findings are not clearly erroneous. CR 52.01.

Anna Burton died testate in 1954. Under her will, her estate was devised and bequeathed equally to her two children, Carrie Breeding and John C. Burton, and a nephew, John Milton Burton. Carrie Breeding and John C. Burton qualified as personal representatives of the estate of Anna Burton. The final settlement filed by them did not indicate that the stagecoach, or any interest therein, was administered as a part of the estate of Anna Burton. The estates of C. H. Burton and Anna Burton contained adequate assets to pay all debts and claims against the estates. There was no necessity to sell the stagecoach or any interest therein for the purpose of paying debts or costs of administration.

Following the death of John C. Burton in 1973, the stagecoach was moved from the garage building to the armory in Monticello where it was stored for over a year. After a dispute arose with respect to the ownership of the stagecoach, it was moved by the

defendant-appellant, Marjorie B. Daugherty, to her home in Falmouth where it is presently stored. Marjorie B. Daugherty is a daughter of John C. Burton and administratrix of his estate.

■ The trial court concluded that title to the stagecoach was held by Anna Burton, John C. Burton and Carrie Breeding as tenants in common following the settlement of the estate of C. H. Burton. Because we believe it to be a correct statement of the law, this court adopts the following portion of the opinion of the trial court:

"This stage coach being an item of personal property under the laws of the Commonwealth of Kentucky, passed first to the Administrator of the estate of John C. Burton, for the purpose of administration only. The title to this personal property in the administrator of C. H. Burton's estate was obviously not absolute, but fiducial for purpose of administration only. At this point, this property belonged to Anna Burton, John C. Burton, and Carrie Breeding, but was held by the Administrator of the Estate of C. H. Burton until said estate was finally settled and could have been used for the payment of debts and other expenses of administration. *Gibson, Admr. vs. Gibson*, 241 Ky. 74, 43 S.W.2d 343; *Broom's Adm'r., vs. National Auto Sales* [Ky.], 246 S.W.2d 1008; *Scheinman vs. Marx* [Ky.], 437 S.W.2d 504.

"This Court concludes that under the laws of this Commonwealth, title to personal property [vests] in the Administrator or Executor of an estate, but only until the estate is finally settled. In event any personal property is left undisposed by the Administrator or Executor, upon the final settlement of the estate, [such personalty] becomes the property of the heirs or devisees of the estate. Any personal property that may be left, after settlement of an estate, will be held jointly by the heirs or devisees for as long as they may desire. In this case, it appears from all the records and evidence that it was not necessary to sell this stage coach to settle C. H. Burton's estate. There-

fore, this item of personal property was preserved in specie which is not only permitted, but encouraged by the laws of this Commonwealth. This item of personal property was therefore jointly owned by these three parties and there could be no other conclusion but the fact that they elected to keep this property, which they did and were the joint owners of same."

■ The trial court reached a similar conclusion with respect to the title to the stagecoach following the death of Anna Burton. Because it contains a correct statement of the law, this court also adopts the following additional portion of the opinion by the trial judge:

"At the death of Anna Burton in 1954 she at that time owned a one-half undivided interest in this coach, Carrie B. Breeding owned a one-fourth in the same, and John C. Burton owned the other one-fourth undivided interest. * * * At her death, Anna Burton left a Will in which she devised all of her property, which would have included her interest in the subject property, equally to her son, John C. Burton, her daughter, Carrie Breeding, and a nephew John Milton Burden. This specific item of personal property was not mentioned in Anna Burton's Will nor was it mentioned in any inventory or settlement of her estate. It further appears from the records in this matter that it was not necessary to sell this coach in order to settle her estate. Therefore, the only conclusion that could be drawn from the evidence in this case is that these parties elected to keep this item of personal property in specie. Therefore, after the settlement of the estate of Anna Burton, this coach was jointly owned as follows:

"1. John C. Burton, a ³/₁₂th interest that he had received from the estate of his father, C. H. Burton, and a ²/₁₂th interest that he had received from the Will of his mother, Anna Burton.

"2. Carrie Breeding—a ³/₁₂th interest she received from her father's estate and a ²/₁₂th interest that she received

from the Will of her mother, Anna Burton.

"3. John Milton Burton—a 2/12th interest that he received from the Will of Anna Burton."

As all of the debts and claims against the estates of C. H. Burton and Anna Burton have been paid, title to the stagecoach vested in the heirs and legatees even though that asset had not been administered as a part of either estate. There no necessity for the appointment of a successor administrator by the county court. Cf., *Anderson v. Smith*, 60 Ky. (3 Metc.) 491 (1861). The circuit court had jurisdiction of this dispute with respect to the ownership of personal property. Furthermore Carrie Breeding was not estopped or barred from asserting her interest in the stagecoach because of the previous settlements in the estates of her father and mother. In neither settlement was the stagecoach treated as an asset of the estate distributed to John C. Burton. There is nothing inconsistent between her claim to an interest in the stagecoach and her acceptance of a distributive share in the estates of her father and mother. Carrie Breeding was not compelled to make an election between her distributive share in the settlement of the estates of her father and mother and her interest in the stagecoach.

■■■ The appellants' main assertion of error is based upon John C. Burton's undisturbed possession of the stagecoach for approximately forty years. The appellants argue that Carrie Breeding's claim is barred by the statute of limitations and adverse possession. The trial court rejected this argument, holding that the possession of the stagecoach by one cotenant, John C. Burton, was not adverse to the interest of another cotenant, his sister Carrie Breeding. This court adopts as a correct statement of law the following portion of the trial judge's opinion:

"The Defendant has made a plea of limitations and adverse possession against the other co-owners. However, this Court is of the opinion that the necessary elements of adverse possession against a co-

owner [have] not been proven. It appears from this entire record that the heirs of C. H. Burton have always considered this stage coach a Burton Heirloom to be owned by the heirs of C. H. Burton. This Court concludes from the evidence in this case that John C. Burton's possession of this property was amicable and not hostile with his co-owners. It is a well established rule of law that one joint tenant cannot acquire title by adverse possession against his co-tenants by mere possession, no matter how long it continues, for he has a right to occupy the premises and his occupancy thereof is not to be presumed hostile, but is presumed to be amicable. In fact, the statute of limitations will not begin to run in favor of a co-tenant in possession until notice of his adverse holding is brought home to his co-owners. See *Miller vs. Powers*, 184 Ky. 417, 212 S.W. 453; *Hannah et al. vs. Littrell et al.*, [304 Ky. 304], 200 S.W.2d 729; *May vs. Chespeake [Chesapeake] & Ohio Ry. Co.*, 184 Ky. 493, 212 S.W. 131; This principle has been upheld by our Court of Appeals by a long line of decisions."

The cases cited in the opinion of the trial judge involve possession by a cotenant of real property. The same principle applies to possession by one cotenant of personal property. It is well settled that one cotenant of personal property cannot maintain an action for replevin of jointly owned personalty against another cotenant who is in possession. The cotenant's remedy is a judicial sale of the personalty and a division of the proceeds. *Baum v. Baum*, 200 Ky. 424, 255 S.W. 71 (1923).

■■ This is not a case in which heirs have informally divided family heirlooms among themselves without formal administration or distribution by the personal representative. If it were shown that each heir possessed items of unadministered personalty for a significant period of time, there would be a strong presumption that the heirs had made a division of the assets and that each heir held items in his or her own right rather than as cotenants. Cf. *Adie v. Cornwall*, 19 Ky. (3 T.B.Mon.) 276 at 283 (1826).

There is no evidence that Carrie Breeding possessed any comparable unadministered personal property from either estate which would support a finding that John C. Burton received the stagecoach as a result of an informal division.

This action is controlled by the statute of limitations relating to actions for the recovery of specific personal property. KRS 413.120(6). As John C. Burton's possession of the stagecoach was not inconsistent with his sister's rights as cotenant of the stagecoach, the statute of limitations did not begin to run against Carrie Breeding until the stagecoach was removed to Falmouth by John C. Burton's administratrix following his death in May 1973. As this action was commenced in August 1975, the action was clearly within the five year period of limitations provided by KRS 413.120(6).

Finding no error in the judgment of the circuit court, that judgment is affirmed.

All concur.