**James R. DUNN and M–D Highland, Incorporated, Plaintiffs–Appellees,**

v.

**Alan W. GULL, Al's Diner, Incorporated, and Al's Diner # 2, Incorporated, Defendants–Appellants.**

No. 91–3907.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 5, 1992.

Decided April 7, 1993.

Joseph S. Van Bokkelen, Timothy G. Kline (argued), Goodman, Ball & Van Bokkelen, Highland, IN, for plaintiffs-appellees.

Reuben A. Bernick (argued), Richard S. Huszagh, Rudnick & Wolfe, Chicago, IL, Hugh D. Brauer, Munster, IN, for defendants-appellants.

Before POSNER and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

The parties in this sanctions case began their litigation in a dispute over a sign. James R. Dunn is the President of M.D. Highland, owners of Miner Dunn restaurants located in northern Indiana and the southern metropolitan Chicago area. In September 1988, the plaintiffs, whom we will call "Dunn" for ease of purpose, filed a trademark infringement and unfair competition lawsuit alleging that the design of the defendants' Lansing, Illinois restaurant sign and the names and symbols contained therein were substantially similar to Dunn's restaurant signs. The complaint alleged that the defendants' sign was used without Dunn's permission and authority, and that the defendants' sign would confuse the public about the ownership and services of the restaurants. We will focus only on the facts that are relevant for our review.

Approximately two weeks after the lawsuit was filed, Dunn sought trademark registration protection from the United States Patent and Trademark Office ("USPTO"). Three applications were sent to register the sign configuration, the name and script, and the oval design incorporated in the sign. The USPTO rejected the sign-configuration application in January 1989 (the "January notice") explaining that the proposed mark did not identify or distinguish its services from those of others. Dunn did not contest the USPTO decision and the application was later abandoned. After receiving the January notice, Dunn also received a discovery request from the defendants seeking all documents relating to, *inter alia*, USPTO trademark and service mark applications. Dunn produced the USPTO applications, but failed to produce the January notice. After securing new counsel, Dunn filed a motion for summary judgment in May 1989, claiming a protectable trademark right in the disputed sign.

Defendants learned on their own about the rejected application and were granted leave to supplement their original district

court brief to inform the court what had occurred. The supplement was filed in January 1990, and a month later Dunn sought to voluntarily dismiss the lawsuit pursuant to Federal Rule of Civil Procedure 41(a)(2). Dunn stated that the defendants had changed the sign and that act rendered further litigation unreasonable and unwarranted. The district court granted the motion. The defendants moved for sanctions arguing that in light of the January notice, the motion for summary judgment was "baseless" and not well grounded in fact, and because Dunn did not disclose the January notice. Dunn responded that it had secured new counsel just before the summary judgment motion was filed, and that the new counsel was not told about, and had not yet discovered, the January notice. The district court denied sanctions for three reasons: First, because the court could not conclude that the lawsuit was not well grounded in fact and law; second, because the defendants did not seek a less severe alternative, such as a motion to compel discovery; and third, because Dunn's failure to produce the January notice was not intentional. The defendants appeal the denial of sanctions.

■ The district court ruled on Dunn's Rule 41(a)(2) motion to dismiss prior to ruling on the defendants' sanctions motion. This timeline raises a question whether the district court maintained jurisdiction over the sanctions motion. The Supreme Court has held that the district court retains jurisdiction over a sanctions motion presented after a Rule 41(a)(1) dismissal. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Although not specifically stating that the same would apply following a voluntary dismissal under Rule 41(a)(2), a logical interpretation of *Cooter* would extend the Supreme Court's reasoning to a Rule 41(a)(2) dismissal, and therefore we believe the district court maintained jurisdiction over the sanctions motion. *Id.* Our jurisdiction arises pursuant to 28 U.S.C. § 1291.

In their motion filed with the district court, defendants sought sanctions pursuant to Federal Rules of Civil Procedure 11 and 37, as well as 28 U.S.C. § 1927. In their brief filed with this court and at oral argument, however, counsel for the defendants claim that sanctions are sought only pursuant to Rule 11. Thus, we consider only the Rule 11 claims.

■ Rule 11 requires attorneys to sign pleadings, motions, and other papers. The attorney's signature warrants that the documents are well grounded in fact and in law, or presents a good faith argument for extending, modifying, or reversing the existing law. The attorney's signature also warrants that the document is not interposed for an improper purpose. *Cooter,* 496 U.S. at 392, 110 S.Ct. at 2454. We have held that Rule 11 sanctions must be imposed if a party has not performed a reasonable inquiry into the facts surrounding a summary judgment motion. *Goka v. Bobbitt,* 862 F.2d 646, 650 (7th Cir.1988). We review Rule 11 sanctions decisions for an abuse of discretion, reversing only if the district court based its decision on an erroneous view of the law or the facts. *Cooter,* 496 U.S. at 405, 110 S.Ct. at 2460.

The defendants argue that Dunn's failure to disclose the January notice was fraudulent, and illustrates an inadequate inquiry into the factual basis of the motion. They assert that Dunn wrongfully argued for protectibility of the sign in light of the January notice and that the January notice establishes that the summary judgment motion was legally baseless.

■ Trademark interests are protected by both federal statute and state common law. *See, e.g., G. Heileman Brewing Co. v. Anheuser–Busch, Inc.,* 873 F.2d 985 (7th Cir.1989); *Henri's Food Products Co. v. Tasty Snacks, Inc.,* 817 F.2d 1303 (7th Cir. 1987). Dunn's complaint sought relief under two theories: First, pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), *Zazu Designs v. L'Oreal S.A.,* 979 F.2d 499, 502 (7th Cir.1992); and second, pursuant to Indiana common law torts of fraud and "palming off", *see Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, —— n. 5, 112 S.Ct. 2753, 2762 n. 5, 120 L.Ed.2d 615 (1992).

■ Dunn did not distinguish the theories for purposes of his motion for summary judgment, and did not cite state law support. Dunn did, however, rely on *Conagra, Inc. v. Singleton*, 743 F.2d 1508 (11th Cir.1984), which combined its analysis of state law claims with consideration of alleged Section 43(a) violations. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) states:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause and such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be ... used in commerce ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

Section 43(a) was revised in 1988 after this lawsuit was filed.[1]

■ The Supreme Court recently analyzed the pre-amendment version of Section 43(a) in *Two Pesos, Inc. v. Taco Cabana, Inc.*, — U.S. —, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). In *Two Pesos*, the Court applied Section 43(a) to a trade dress dispute, stating that Section 43(a) offers a broader range of protection than that offered to registered marks, but the same general principles govern consideration of the factors qualifying both registered and unregistered marks for protection. *Id.* — U.S. at —, 112 S.Ct. at 2757. The elements determining statutory trademark protection are: 1) validity of the mark; and 2) infringement. The first element, validity of the mark, is determined by whether the mark identifies and distinguishes particular goods and services to the public. A plaintiff may establish this by showing that the symbol is inherently distinctive or, if not inherently distinctive, that the symbol has become distinctive by acquiring a secondary meaning. A series of terms identifies the five levels of distinctiveness used to make these decisions. They are, in order from least to most distinctive, 1) generic; 2) descriptive; 3) suggestive; 4) arbitrary; 5) fanciful. *Id.* Under sections 2(e) and 2(f) of the Lanham Act, if a descriptive mark acquires secondary meaning by distinguishing itself from the applicant's goods in commerce, this would constitute secondary meaning, fulfilling the distinctiveness prong. 15 U.S.C. §§ 1052(e)–(f); *Two Pesos*, — U.S. at —, 112 S.Ct. at 2757.

■ The second element, infringement, may be established by showing that the allegedly infringing mark causes a likelihood of confusion among consumers for the goods and services sold by the plaintiff. *Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1266 (7th Cir.1989). If the mark causes a likelihood of confusion in the market, infringement may be excused if the similar arrangement of the features is due to a functional purpose. *Two Pesos*, — U.S. at —, 112 S.Ct. at 2758; *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 974 (2d Cir.1987).

1. The amended version of Section 43(a) states:

(a) Any person, who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The January notice addressed only one of the three registration applications; the one concerning the sign configuration. Not only did the January notice deal only with one element of the sign, it also addressed only the distinctiveness of the mark, not the likelihood of confusion. Distinctiveness is a mixed question of law and fact. *Cf. Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir.1976) (Friendly, J.) (considering the distinctiveness of terms and in light of those terms whether the complaint was legally cognizable). Here, the USPTO decided that the sign did not warrant trademark protection because it was not uniquely identifiable or distinguishable. This decision answered a mixed question of law and fact. Likelihood of confusion presents a similar mixed question, *Henri's Food Products Co. v. Kraft, Inc.*, 717 F.2d 352, 354 (7th Cir.1983), *Spraying Systems Company v. Delavan, Inc.*, 975 F.2d 387 (7th Cir.1992), and we addressed that question in an earlier case.

In *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 378–79 (7th Cir.1984), the Federal Circuit affirmed an agency decision of likelihood of confusion, and we determined that under those circumstances, the agency decision could be given collateral estoppel effect. We held that an agency determination may have weight in a district court decision of a trademark right, but such a determination without further review may not bind the court. We did not hold that an agency decision that had not been reviewed by a federal court would collaterally estop a federal court decision on the same issue. *EZ Loader* assists us in our review of this case because unlike the mixed question of law and fact decided by the agency in *EZ Loader*, the mixed question decided in the January notice was not reviewed by a federal court prior to the summary judgment motion. Therefore, the USPTO decision in the January notice did not estop the district court from making an independent decision of whether summary judgment was warranted on Dunn's claims.

The importance the defendants place upon the decision in the January notice is misplaced. Although it bears weight, it is not enough to render Dunn's motion for summary judgment legally baseless. Further, Dunn's arguments were not fraudulent and did not make false factual or legal representations.

Finally, the district court dealt first hand with the situation and made a factual determination that Dunn's failure to disclose the January notice was not intentional. We find no reason to believe that the district court abused its discretion in making such a determination. We do not wish to be understood as condoning Dunn's actions in failing to disclose the January notice, but there was no abuse of discretion by the district court when it determined that Rule 11 sanctions were not appropriate in this situation. *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 335 (7th Cir.1992).

The defendants' remaining arguments were abandoned on appeal. The district court decision is AFFIRMED.