190 F.3d 815 (7th Cir. 1999)
 Thomas R. Hutchinson, individually, and as personal representative of the Estate of Robert W. Hutchinson, deceased, and the Estate of Anne E. Hutchinson, deceased, Plaintiff-Appellant,
v.
Ira Spanierman, individually and as an agent of Ira Spanierman, Inc., Spanierman Gallery and Kennedy Galleries, Inc.; Ira Spanierman, Inc., a voluntarily dissolved New York corporation; Spanierman Gallery, an unincorporated association; William E. Jageman, individually and as a shareholder of Jageman and McGraw, Inc.; Jageman and McGraw, Inc., a voluntarily dissolved professional corporation; Robert H. Hahn, individually and as a member of Bamberger, Foreman, Oswald, and Hahn; Bamberger, Foreman, Oswald, and Hahn, a general partnership; and Rita Deere, individually and as an agent of Robert H. Hahn and Bamberger, Foreman, Oswald, and Hahn, Defendants-Appellees.
 No. 97-2752
 United States Court of Appeals, Seventh Circuit
 Argued April 1, 1999
Decided September 10, 1999
 
 Appeal from the United States District Court for the Southern District of Indiana, Evansville Division. No. EV 90-44-C-M/H--Larry J. McKinney, Judge.[Copyrighted Material Omitted]
 Before Harlington Wood, Jr., Ripple, and Kanne, Circuit Judges.
 Knne, Circuit Judge.
 
 
 1
 This case deals with the rights of certain individuals concerning an art collection that began passing through intestate succession among several family members beginning more than a century ago. Robert Hutchinson originally filed suit for partition of the art collection in 1980 (the "1980 Case") in the District Court for the Southern District of Indiana. The district court dismissed Robert Hutchinson's 1980 Case after the court concluded that it did not have jurisdiction over the defendants who had purchased a majority of the pieces of the art collection and that Robert Hutchinson could not establish an interest in the art collection. The district court also determined that Robert Hutchinson's claims to the art collection under a theory of intestate succession were barred by laches, and, therefore, laches constituted a separate and independent ground for dismissal of the 1980 Case. Robert Hutchinson did not appeal the judgment rendered in the 1980 Case.
 
 
 2
 Approximately one decade after his father had initially filed suit, Thomas Hutchinson, individually and as personal representative of the estates of his parents, Robert W. Hutchinson and Anne E. Hutchinson, filed suit in the District Court for the Southern District of Indiana accusing the defendants, Ira Spanierman, the Spanierman Gallery, and Robert Hutchinson's attorneys, of conspiring to prevent consideration of his father's action for partition.[1] Thomas Hutchinson also accused Robert Hutchinson's attorneys of negligently failing to press his father's partition case. Before the district court, Thomas Hutchinson moved for summary judgment on the issue of the proper statute of limitations applicable to his father's estate action for the partition of the proceeds of the sale of the art collection. Thomas Hutchinson also asked the district court to consider a separate suit he had filed as a continuation of the 1980 Case. The defendants moved for summary judgment on these claims as well.
 
 
 3
 The district court granted the defendants' motions for summary judgment after concluding that the doctrine of laches precluded Robert Hutchinson from establishing joint ownership of the art collection and, therefore, standing to pursue his claims at the time he filed the 1980 Case. The district court also concluded that the 1980 Case was barred by the applicable statute of limitations. For these reasons, the district court concluded that Thomas Hutchinson could not prove the causation or damages elements on the malpractice, collusion, and wrongful interference claims raised in his suit because Robert Hutchinson's cause of action was barred by laches and untimely according to the applicable statute of limitations at the time he filed the case in 1980. In other words, the defendants' alleged conduct did not cause any injuries Robert Hutchinson may have suffered. The district court also denied Thomas Hutchinson's motion to consider his suit a continuation of the 1980 Case and denied Thomas Hutchinson's motion for summary judgment on the issue of the applicable statute of limitations. Because we agree that the doctrine of laches precluded Robert Hutchinson from establishing an ownership interest in the art collection at issue, we affirm the district court's grant of summary judgment in favor of the defendants. We also affirm the district court's evidentiary rulings, its decision to deny Thomas Hutchinson's request for sanctions, and its decision to disqualify Hutchinson's counsel.
 
 I. History
 A. Factual Background
 
 4
 Theodore Robinson was an American Impressionist artist who died intestate in the late nineteenth century. The numerous paintings Theodore Robinson created are referred to as the "Theodore Robinson Collection." Thomas Hutchinson claims that his father had an ownership interest in the collection according to a line of ancestors traceable to Theodore Robinson.
 
 
 5
 Theodore Robinson's brother and heir, Hamline Robinson, inherited several paintings from his brother's estate. In 1907, Hamline Robinson, like his brother, died intestate. After Hamline Robinson died, his estate was probated in Missouri state court with notice to claimants published in the area newspaper. His heirs were his widow, Florence A. Robinson, and his two daughters, Florence Hutchinson and Ellen Terhune. Each inherited an undivided one-third interest in Hamline Robinson's estate, which included his brother's art collection.
 
 
 6
 After her husband's death, Florence Robinson took possession of the art collection and moved in with her daughter, Ellen Terhune. While Florence Robinson lived with Ellen Terhune, they stored the art collection in trunks and displayed it throughout her daughter's home. Florence Robinson died intestate in 1927 leaving her two daughters as her heirs. Although each daughter was entitled to a one-half interest in their mother's estate, Ellen Terhune maintained exclusive possession and control of the art collection throughout her life. During this time, Ellen Terhune permitted a Kansas City art gallery to maintain a number of the paintings for safekeeping and display.
 
 
 7
 Robert Hutchinson was the son of Florence Hutchinson and the father of the plaintiff in this case, Thomas Hutchinson. Robert Hutchinson claimed that during a visit made by Ellen Terhune to see his mother, she referred to him as a trustee with respect to the paintings and told him that he was entitled to his mother's share of the art collection upon her death, less $400 for a personal loan. In 1945, Florence Hutchinson died intestate, leaving her husband and her son, Robert Hutchinson, as her heirs. Her husband died intestate in 1948, leaving Robert Hutchinson as the sole heir. However, no claim for or accounting of the art collection was made at that time.
 
 
 8
 Upon the death of her husband, Ellen Terhune moved to Evansville, Indiana, to live with her daughter, Margaret Thompson. They continuously displayed the art collection in her daughter's home and in an art gallery until Ellen Terhune's death. In 1964, Ellen Terhune died intestate. An estate for Ellen Terhune was never opened, and Margaret Thompson was her sole heir. In 1965, Margaret Thompson advised Robert Hutchinson of the death of Ellen Terhune. In 1968, Robert Hutchinson obtained copies of Ellen Terhune's estate papers which identified Ellen Terhune as the sole owner of the entire art collection. Despite learning of this fact, Robert Hutchinson made no claim of ownership to the art collection.
 
 
 9
 After her mother's death, Margaret Thompson obtained possession of the remainder of the art collection from the art gallery where certain pieces were being displayed and began to negotiate for the sale of the collection. During this process, Margaret Thompson received a letter from Ira Spanierman soliciting work for an appraisal of the paintings. After an exchange of correspondence with Margaret Thompson, Spanierman performed the appraisal of the paintings in Indiana. Although he originally expressed no interest in purchasing any pieces from the collection, Spanierman did, in fact, purchase the majority of the pieces in the collection from Margaret Thompson at a later date. In 1972, Robert Hutchinson met Spanierman in New York and learned of the purchase. In 1974, Robert Hutchinson became aware that Margaret Thompson pledged the remaining pieces as collateral for a personal loan. Not until 1980, however, did Robert Hutchinson initiate legal action in which he claimed an alleged ownership interest in the art collection.
 
 B. Procedural History
 
 10
 The appeal presently before us involves consideration of three separate lawsuits to differing degrees. In 1980, Robert Hutchinson filed a Complaint for Declaratory Judgment, Partition and Accounting against Margaret and Gordon Thompson in the Southern District of Indiana alleging that he had an ownership interest in the art collection. In this suit Robert Hutchinson requested a declaration of his interest in the art collection, an accounting for all items in the collection and any proceeds derived therefrom, and a partition of the collection. One year later, Robert Hutchinson filed an amended complaint adding Ira Spanierman and the Spanierman Gallery (purchasers of a majority of the art collection) as defendants. The Spanierman defendants filed a motion to dismiss the claims filed against them for lack of personal jurisdiction, for failure to state a claim, and because the claims were timed barred. Margaret Thompson filed an answer claiming that Robert Hutchinson's claims were barred by the applicable statute of limitations and by the doctrine of laches. She also asserted that she had obtained absolute title to the art collection by adverse possession. Margaret Thompson also filed a motion for summary judgment arguing that Robert Hutchinson could not prevail under a trust theory and that the applicable statute of limitations and the doctrine of laches barred his claims.
 
 
 11
 In 1988, the district court granted the Spanierman defendants' motion to dismiss and Margaret Thompson's motion for summary judgment. With respect to the Spanierman defendants' motion to dismiss the claims against Spanierman and his gallery, the district court concluded that it lacked personal jurisdiction over these defendants. The district court based this conclusion on the finding that Spanierman's contact with the forum state of Indiana, namely one day for the purpose of the appraisal of the art collection, did not rise to a sufficient level to carry jurisdiction with it over the actual sale of the collection which occurred in New York and was unrelated to the appraisal.
 
 
 12
 As to Margaret Thompson's motion for summary judgment, the district court identified four theories pursuant to which Robert Hutchinson might have alleged an interest in the art collection--an inheritable interest, an express trust, a resulting trust, and a constructive trust-- and found none to be applicable. The district court found that the doctrine of laches barred Robert Hutchinson's claims under an intestate succession theory and that he did not have an enforceable interest in the art collection under an express, resulting, or constructive trust theory. Alternatively, the district court concluded that the applicable statute of limitations barred Robert Hutchinson's claims under an express and constructive trust and the doctrine of laches separately barred all of his claims. The district court determined that Robert Hutchinson had unreasonably delayed in asserting any interest in the art collection after the occurrence of several events including: the Thompsons' repudiation of any alleged trust in either 1967 or 1968; his viewing of Ellen Terhune's estate papers in 1968 in which she was listed as the sole owner of the art collection; and his discovery in 1972 of Margaret Thompson's sale of most of the art collection to Ira Spanierman. The district court also concluded that this delay prejudiced the defendants as a result of faded memories and the death of several important witnesses. Robert Hutchinson did not appeal the final judgment in this case.
 
 
 13
 In 1990, Robert Hutchinson's son, Thomas Hutchinson, filed related lawsuits based upon alleged misconduct by both Robert Hutchinson's counsel and the defendants in the 1980 Case. In the first case, Case No. EV-90-43-C (the "43 Case"), Thomas Hutchinson asserted claims against Ira Spanierman and his gallery and the estate of Margaret Thompson claiming that these defendants committed fraud on the court in connection with the resolution of the 1980 Case. Thomas Hutchinson claimed that his father's attorneys failed to pursue a valid claim for partition and that their actions interfered with the administration of justice to the extent of causing a fraud on the court. Alternatively, Thomas Hutchinson believed the district court should have abstained from exercising its jurisdiction over the issue of ownership of the art collection out of deference to a state's right to set policy regarding issues of property. Thomas Hutchinson argued that such an abstention should have prohibited the district court from actually ruling on the merits of the partition claim-- even though it did--and, therefore, any other ruling by the district court in that case should be disregarded. Based on this reasoning, Thomas Hutchinson argued that the 43 Case should be considered a continuation of the 1980 Case under the Indiana Journey's Account Statute. See Ind. Code sec. 34-1-2-8. Accordingly, Thomas Hutchinson believed the relevant aspect of the 1980 Case to be continued by the 43 Case would be the claim for an accounting and partition of the proceeds of the sale of the art collection.
 
 
 14
 Thomas Hutchinson filed a second action in that same year, Case No. EV-90-44-C (the "44 Case"), asserting claims for legal malpractice against his father's former lawyers, constructive fraud, wrongful interference with attorney-client relationship, collusion, and civil claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"). During the course of the 44 Case, issues pertaining to the disqualification of Thomas Hutchinson's attorneys arose. Robert Hutchinson's former counsel, Robert Hahn and the law firm of Bamberger, Foreman, Oswald, and Hahn (the "Bamberger defendants"), moved to disqualify Thomas Hutchinson's counsel under Indiana's advocate witness rule. The district court granted this motion and disqualified three of Thomas Hutchinson's attorneys. In response to the district court's decision regarding disqualification, Thomas Hutchinson filed a motion for reconsideration, a motion for sanctions against the defendants for having filed the motion to disqualify his counsel, a motion to disqualify counsel, and a motion seeking recusal of the district judge who granted the motion to disqualify. Thomas Hutchinson also filed petitions for writs of mandamus with this Court seeking an order compelling the district court to vacate the disqualification order and an order disqualifying the district judge and vacating orders he had entered in favor of the defendants in the case. Each of the motions and petitions was denied.
 
 
 15
 In an order dated January 22, 1997, the district court considered a motion for summary judgment filed by the Bamberger defendants in the 44 Case with respect to the claims filed against them. The court also addressed motions filed by Thomas Hutchinson for partial summary judgment in the 44 Case and to have the 43 Case considered a continuation of the case filed in 1980 by Robert Hutchinson under the Indiana Journey's Account Statute.
 
 
 16
 With respect to the parties' motions for summary judgment, the district court determined that resolution of these motions first required consideration of whether Robert Hutchinson's action seeking partition would have been barred by the statute of limitations or whether laches applied when the case was filed in 1980. The district court noted that if Robert Hutchinson did not file the 1980 Case within the applicable statute of limitations or if laches applied to this case, then the legal malpractice claims against the attorneys and the collusion claims against all the defendants would be moot because these claims each required proof of causation that could not be established if no viable claim for partition existed in the first place.
 
 
 17
 The district court likewise found Thomas Hutchinson's motion to have the 43 Case considered a continuation of the 1980 Case to turn on these same issues. Thomas Hutchinson asserted that the district court's opinion in the 1980 case should be considered an abatement because it was the result of fraud and not a decision on the merits. Under the Indiana Journey's Account Statute, a case must have been timely filed, but terminated for reasons other than a decision on the merits or negligence in its prosecution to be eligible for continuation. If a new action is brought within five years of the termination of the prior action, the new action may be deemed a continuation of the former action assuming the statutory conditions are met. However, the district court found that the resolution of whether the 1980 Case was filed within the applicable statute of limitations and a determination of whether laches applied necessarily preceded resolution of the applicability of the Indiana Journey's Account Statute.
 
 
 18
 With respect to the applicability of laches, the district court determined that a joint ownership interest in the disputed property was a necessary precondition to bringing an action for partition and concluded that the doctrine of laches precluded Robert Hutchinson from establishing such an ownership interest in the art collection at the time of the 1980 Case. Although joint ownership is typically presumed to exist in a partition case, the district court recognized that the very essence of the 1980 Case was the issue of the ownership of the art collection. The district court concluded that the doctrine of laches prevented Robert Hutchinson from demonstrating an ownership interest in the art collection, and, therefore, he lacked standing to pursue his claims.
 
 
 19
 In the 1980 Case, Robert Hutchinson claimed an ownership interest in the art collection through an intestate interest allegedly derived through his mother and through her uncle, Hamline Robinson. The district court found that Margaret Thompson, one of the defendants in the 1980 Case, claimed ownership through a similar route, but that she also had the added ability to trace actual possession or control of the art collection directly through her mother and her grandmother and to Hamline Robinson. The district court determined that Robert Hutchinson's ability to prove his ownership interest in the art collection was fatally hampered by the fact that he could not present sufficient competent evidence to support his claim of ownership because of the undue and inexcusable delay in pursuing his case. Based on this fact and the court's finding that the defendants were unduly prejudiced by Robert Hutchinson's delay in pursuing his claim, the district court found that the doctrine of laches applied to the 1980 Case. The district court also concluded that the claims pursued in the 1980 Case were barred by the applicable statute of limitations.
 
 
 20
 The applicability of laches and the determination that the claims in the 1980 Case were time barred would have prevented Robert Hutchinson from establishing the causation and damages aspects of his claims. Accordingly, the district court granted the Bamberger defendants' motion for summary judgment and denied Thomas Hutchinson's motion for summary judgment and his motion to have the 43 Case considered a continuation of the 1980 Case. In response to this decision, the remaining defendants also moved for summary judgment. Thomas Hutchinson filed a motion construed by the district court to be a motion to vacate the order granting summary judgment in favor of the Bamberger defendants. The district court denied Thomas Hutchinson's motion to vacate and granted summary judgment in favor of the remaining defendants largely based on the reasoning contained in its January 22, 1997, order granting summary judgment in favor of the Bamberger defendants. Thomas Hutchinson now appeals the district court's decisions in the 44 Case.
 
 II. Analysis
 A. Standard of Review
 
 21
 Thomas Hutchinson appeals many of the decisions by the district court in this case, including the district court's grant of summary judgment in the 44 Case in favor of the defendants and the district court's evidentiary rulings in that case, the rulings regarding the disqualification of his counsel, and the ruling denying Thomas Hutchinson's request for the imposition of sanctions. We review a district court's grant of summary judgment de novo, drawing our own conclusions of law and fact from the record before us. See Thiele v. Norfolk & Western Ry. Co., 68 F.3d 179, 181 (7th Cir. 1995). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). "A genuine issue of fact exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." Roger v. Yellow Freight Sys., Inc., 21 F.3d 146, 149 (7th Cir. 1994).
 
 
 22
 The remaining issues, including the evidentiary rulings of the district court, the ruling on the disqualification of counsel, and decisions regarding sanctions, are reviewed for an abuse of discretion. See Old Republic Ins. Co. v. Employers Reinsurance Corp., 144 F.3d 1077, 1082 (7th Cir. 1998); Dunn v. Gull, 990 F.2d 348, 350 (7th Cir. 1993); United States v. Defazio, 899 F.2d 626, 629 (7th Cir. 1990).
 
 
 23
 B. The Applicability of Laches to the 1980 Case
 
 
 24
 We agree with the district court's reasoning that if the doctrine of laches applied to the 1980 Case with respect to Robert Hutchinson's ability to establish an ownership interest in the art collection, Thomas Hutchinson's claims would necessarily fail. Without being able to show an ownership interest in the art collection, Robert Hutchinson would have been unable to demonstrate the legally protected interest required to seek partition of the proceeds resulting from the sale of the art collection. In essence, the outcome of the 1980 Case could not be attributed to the defendants' conduct. Consequently, the defendants could not be held liable for any of the alleged injuries in connection with the 1980 Case asserted by Thomas Hutchinson.
 
 
 25
 It is a fundamental rule of law that one who sleeps on his rights loses them. "[L]aches addresses delay in the pursuit of a right when a party must assert that right in order to benefit from it." Williams v. Rogier, 611 N.E.2d 189, 196 (Ind. Ct. App. 1993). The doctrine of laches "bars a party's rights when the party has unreasonably delayed their assertion so as to cause prejudice to the opposing party." Hawxhurst v. Pettibone Corp., 40 F.3d 175, 181 (7th Cir. 1994). In civil matters, the doctrine of laches consists of three elements: (1) inexcusable delay in asserting a right; (2) implied waiver from knowing acquiescence in existing conditions; and (3) circumstances resulting in prejudice to the adverse party. See In re Geisler, 614 N.E.2d 939, 940 (Ind. 1993); see also In re Paternity of K.H., 709 N.E.2d 1033, 1036 (Ind. Ct. App. 1999). However, "[t]he mere passage of time is insufficient; the defendant must also show that the plaintiff's delay was unreasonable and that the defendant was prejudiced as a result." Habig v. Bruning, 613 N.E.2d 61, 65 (Ind. Ct. App. 1993).
 
 
 26
 In the present case, Thomas Hutchinson attempts to use what he regards as the applicable statute of limitations and an alleged absence of inequitable conduct as a gauge for determining whether the doctrine of laches may be applied to the 1980 Case. Thomas Hutchinson asserts that the fifteen year statute of limitations for partition of real property should also apply to the partition of personal property in the form of the art collection and the proceeds derived from its sale. Based on this belief, Thomas Hutchinson contends that Robert Hutchinson filed the 1980 Case within the fifteen year statute of limitations allegedly applicable to such actions. Therefore, laches should not have been applied to the claims at issue unless some form of inequitable conduct could be shown. Although the district court recognized that no Indiana case law addressing the applicable statute of limitations exists, the court determined that an action for partition of personal property is governed by the statute of limitations applicable to injury to personal property. At the very least, Thomas Hutchinson claims that the issue of the applicable statute of limitations must be certified to the Indiana Supreme Court for clarification. However, regardless of which statute of limitations should apply in the present case, we conclude that the doctrine of laches bars Robert Hutchinson from establishing any claim he may have had to the art collection. Even though statutes of limitations and laches both implicate whether a particular case has been pursued in a timely manner, "[t]he doctrine of laches may bar a plaintiff's claim even though the applicable statute of limitations has not yet expired if the laches are of such character as to work an equitable estoppel (which contains the additional element of reliance by the defendant)." Shearer v. Pla-Boy, Inc., 538 N.E.2d 247, 254 (Ind. Ct. App. 1989); see also Shafer v. Lambie, 667 N.E.2d 226, 231 (Ind. Ct. App. 1996). The record contains evidence of reliance upon the conduct of Robert and Florence Hutchinson by the defendants in this case that permits the application of laches regardless of whether the 1980 Case was filed within the applicable statute of limitations.
 
 
 27
 At the outset of our examination of the issue of the application of laches, we note that we agree with the assessment of the district court that the existence of joint ownership in the art collection was in dispute at the time Robert Hutchinson filed his claim in 1980, despite the claim of the alleged existence of a co-tenancy in the art collection created by intestate succession at some time in the past. The very wording of the complaint filed by Robert Hutchinson in the 1980 Case requested that the court "determine, declare and decree the interest, right and title of the parties hereto in the Theodore Robinson Collection." To pursue successfully the partition of a particular piece of property before a court, the individual seeking partition must be able to show an ownership interest in the property. Without showing such an interest, the person seeking partition is nothing more than an outsider looking to carve out a piece of property that otherwise does not belong to him. While the district court cited cases dealing with the partition of real property to support this proposition, see Burford v. Burford, 396 N.E.2d 394, 397 (Ind. Ct. App. 1979); Hurwich v. Zoss, 170 Ind.App. 542,353 N.E.2d 549, 551 (Ind. Ct. App. 1976); Helvey v. O'Neill, 288 N.E.2d 553, 557 (Ind. Ct. App. 1972), we see no reason why such a principle is not applicable to requests for partitions of personal property as well, see Willett v. Clark, 542 N.E.2d 1354, 1357 (Ind. Ct. App. 1989) ("[W]hile we are unaware of any Indiana appellate decisions sanctioning partition of personal property, the general rule is that a co-tenant of personal property has a right to have it partitioned.").
 
 
 28
 As the plaintiff in the 1980 Case, Robert Hutchinson bore the burden of proving that he had an ownership interest in the art collection. The district court succinctly recognized that "[t]he fact that he sought a declaration from the Court as to ownership of the Collection, rather than merely allowing the defendants to raise it as an affirmative defense, indicates there was some doubt about that issue." In the 1980 Case, Robert Hutchinson alleged that his ownership interest in the art collection stemmed from intestate succession derived through his mother, Florence Hutchinson, and through her father, Hamline Robinson. Thomas Hutchinson also relies on this reasoning in his effort to establish his father's alleged ownership interest in the art collection. Furthermore, Thomas Hutchinson asserts that the defendants in the 1980 Case should not have been permitted to deny Robert Hutchinson's ownership interest in the art collection because the art collection constitutes an unadministered asset from the estate of Florence Robinson, which his father held in constructive possession as a co- tenant.
 
 
 29
 Thomas Hutchinson relies on the case of Daugherty v. Breeding, 553 S.W.2d 299 (Ky. Ct. App. 1977), and the rules of intestate succession in Missouri and California to argue that the art collection was an unadministered asset from the estates of Hamline and Florence Robinson. Thomas Hutchinson claims that Florence Hutchinson and, then, his father maintained constructive possession of the art collection as co-tenants in the collection with Ellen Terhune and Margaret Thompson. Daugherty involved a woman bringing suit against the estate of her brother in which she claimed an interest in a stagecoach owned by their father. Their mother (having been preceded in death by her husband) left each an equal interest in her estate, which included the stagecoach. During his lifetime, the brother cared for and maintained the stagecoach in his garage for display to the public. The court rejected the argument that the possession of the stagecoach by the brother was adverse to the interests of his sister and concluded that the stagecoach was an unadministered asset from the estate of their mother in which the brother and sister were co-tenants.
 
 
 30
 Like the art collection at issue in the 1980 Case, the personalty at issue in Daugherty passed through intestate succession and had not been administered as part of an estate. However, at this point, the similarity between the two cases ends. Language in the Daugherty opinion suggests that the outcome would have been different if the court had been faced with facts resembling those presently before this court. The court stated that:
 
 
 31
 This is not a case in which heirs have informally divided family heirlooms among themselves without formal administration or distribution by the personal representative. If it were shown that each heir possessed items of unadministered personalty for a significant period of time, there would be a strong presumption that the heirs had made a division of the assets and that each heir held items in his or her own right rather than as cotenants.
 
 
 32
 Daugherty, 553 S.W.2d at 303. Consistent with the reasoning expressed in Daugherty, the district court recognized in the present case that "[a] logical inference to draw from [the behavior of the family members] is that some consensus had been reached as to who should have the Collection."
 
 
 33
 Ultimately, Robert Hutchinson's ability to establish an ownership interest in the art collection was dependent upon his ability to show an ownership right in the property acquired by descent. It is his ability to make such a showing that was barred by laches in the 1980 Case. For Robert Hutchinson to have any ownership interest in the art collection, he would have had to have received this interest from his mother, Florence Hutchinson. However, his mother never possessed any pieces of the art collection and failed to press any claim of ownership at any time during her life. There is also no evidence demonstrating that any interest in the art collection passed to her son upon her death. Moreover, evidence to the contrary did in fact exist. Estate papers for Ellen Terhune, of which Robert Hutchinson had knowledge in 1968, showed Ellen Terhune as the sole owner of the art collection. Despite learning of this fact, Robert Hutchinson chose to forgo asserting any interest in the art collection at the time of his mother's death or at the time he learned that Ellen Terhune was considered to be the sole owner of the art collection.
 
 
 34
 The conduct of both Robert and Florence Hutchinson warranted the application of the doctrine of laches to preclude Robert Hutchinson from establishing an ownership interest in the 1980 Case. As stated, the doctrine of laches consists of three elements: (1) inexcusable delay in asserting a right; (2) implied waiver of the right from a knowing acquiescence in existing conditions; and (3) circumstances resulting in prejudice to the adverse party. See In re Geisler, 614 N.E.2d at 940. If the doctrine of laches is to be applied prior to the expiration of the applicable statute of limitations, reliance by the defendant must also be shown. See Shearer, 538 N.E.2d at 254. When the facts of this case and the 1980 Case are considered, it is clear that the elements required for the application of the doctrine of laches existed at the time Robert Hutchinson filed the 1980 Case.
 
 
 35
 There is no doubt that Robert Hutchinson delayed in pressing his claim for partition in the art collection. Both he and his mother had knowledge that the art collection remained in the possession and exclusive control of other family members--namely Ellen Terhune and her daughter Margaret Thompson--throughout their lives. Indeed, Robert Hutchinson testified in his deposition that he became aware of his alleged interest in 1945 and 1952 after conversations with Ellen Terhune. Despite this fact, Robert Hutchinson made no demand on Margaret Thompson with respect to his alleged interest until he allegedly spoke with Margaret Thompson about his interest in the late 1960's. After this alleged demand on his interest, Robert Hutchinson made no further attempt to claim his interest until approximately six years later. However, even after again allegedly contacting Margaret Thompson about his interest, Robert Hutchinson made no inquiry until filing his suit in 1980.
 
 
 36
 Because Robert Hutchinson is also charged with the delay of his mother in asserting any claim she may have had, decades passed before any legal action was taken with respect to the art collection. Both Robert and Florence Hutchinson were armed with the knowledge that other family members possessed the art collection, yet they did nothing to protect their alleged ownership interests. Rather, they sat idly by and delayed in attempting to preserve any claimed interest. When viewed in this light, the facts demonstrate a tremendous lapse in time before Robert Hutchinson filed his claim in 1980. No credible excuse for this delay has been offered to this Court. Absent some compelling explanation, a delay of this sort is without question inexcusable given the opportunities Robert and Florence Hutchinson had to assert their alleged ownership interest.
 
 
 37
 The conduct of both Robert Hutchinson and his mother, Florence Hutchinson, not only reflects an inexcusable delay in pressing their claim, but also constitutes a conscious indifference with respect to asserting an interest in the art collection and bringing a cause of action for partition of the art collection or the proceeds derived from its sale. Their acquiescence with respect to the existing conditions was manifested in their utter disregard for ensuring the preservation of their alleged ownership interest in the art collection as it was possessed and passed from generation to generation among other individuals. First, there is no evidence in any record that Florence Hutchinson ever questioned either her sister's possession or her perceived ownership of the art collection. Second, Robert Hutchinson knew of Ellen Terhune's possession of the art collection and obtained her estate papers, which identified her as the sole owner of the art collection, after her death in 1964. And, Ellen Terhune's family repudiated Robert Hutchinson's claim that the art collection was being held in some sort of trust. It would seem logical that a reasonable person believing they shared an ownership interest in the property would have pressed the claim at this point or soon thereafter. Certainly, such a claim could have been brought when Robert Hutchinson learned in 1972 that Margaret Thompson sold the vast majority of the collection to Ira Spanierman in 1966 and used the remaining pieces to secure a personal loan from a bank. The listing of Ellen Terhune as the sole owner of the art collection in her estate papers and Margaret Thompson's sale of the pieces from the collection and use of the pieces as security for a personal loan were completely adverse to and constituted a definitive denial of any alleged ownership interest Robert Hutchinson may have had in the collection. Rather than pursuing his alleged interest, Robert Hutchinson chose to forgo the assertion of any ownership in the collection in the face of all this information, and, instead, sat on his alleged claim until 1980. The district court accurately summed up the Hutchinsons' indifference to their rights in the art collection by stating "both [Robert and Florence Hutchinson] knew the Collection was being possessed and controlled exclusively by [Ellen Terhune and Margaret Thompson], a condition in which they acquiesced either happily, or without obtaining some writing that would indicate they still maintained an interest in the artwork."
 
 
 38
 We also have no difficulty in concluding that Robert Hutchinson's inexcusable delay in asserting his alleged interest in the art collection and his acquiescence with respect to the status of the collection resulted in prejudice to the defendants in the 1980 Case. By the time Robert Hutchinson got around to asserting his alleged interest in the art collection, those in the best position to shed light on the issues of ownership were deceased. Indeed, the district court determined in the 1980 Case that evidence had been lost, memories had faded, and witnesses had disappeared with respect to events that had occurred fifteen years earlier. The defendants in the 1980 Case would certainly have been prejudiced if forced to defend their interest in the art collection at such a late date. "Successful invocation of the doctrine of laches has included proof that available witnesses did not have a distinct recollection of the details of the case or that they had no access to records which would disclose the same." In re Seigel, 708 N.E.2d 869, 871 (Ind. 1999).
 
 
 39
 The district court also concluded in the present case that laches applied regardless of whether the applicable statute of limitations had expired. The district court based this conclusion on its finding that the defendants in the 1980 Case relied on the acquiescence of Robert and Florence Hutchinson in matters involving the art collection. Margaret Thompson sold the majority of the pieces composing the collection to Ira Spanierman and the Spanierman Gallery in 1966 and encumbered the remainder of the unsold pieces as security for a personal loan. In addition to the fact that Thomas Hutchinson does not specifically challenge this finding on appeal, we independently conclude that these actions satisfy the reliance aspect required to find that laches applies before the expiration of the applicable statute of limitations. The decision to sell the majority of the art collection and to use the remaining pieces as collateral certainly reflects a reliance on the fact that the art collection was not otherwise encumbered by a separate interest. Had Robert Hutchinson pressed his claim while nearly the entire collection was in the possession of Margaret Thompson or shortly after the sale of the collection, it is likely that the defendants in the 1980 Case would have had at least a portion of the proceeds still available so as to permit them to make reasonable reparations to Robert Hutchinson if his claim had been properly established. Because Robert Hutchinson failed to pursue his claims in a timely manner, it would be inequitable to permit Robert Hutchinson to proceed with his claims, for "a person who tacitly encourages an act to be done cannot afterward exercise his legal right in opposition to such consent, where his conduct or acts of encouragement induced the other party to change his position so that he will be prejudiced by the assertion of such claim." Scherer v. Scherer, 405 N.E.2d 40, 47-48 (Ind. Ct. App. 1980) (citation omitted); see also Crousore v. Allee, 82 N.E.2d 276, 566 (Ind. Ct. App. 1948) (citation omitted) ("[W]here during the unnecessary delay interests of innocent third persons have attached, or the party against whom relief is asked has, in reliance upon the existing situation, so changed his position that if existing conditions were removed, he would suffer injury, the delay will be characterized as laches.").
 
 
 40
 We find that the doctrine of laches prevented Robert Hutchinson from establishing an ownership interest in the art collection in the 1980 Case. For this reason, Thomas Hutchinson is unable to attribute the failure of the 1980 Case to the conduct of the defendants. Thomas Hutchinson's claims necessarily fail because of his inability to prove causation and damages with respect to these claims. We conclude that the district court's grant of summary judgment in favor of defendants was proper.
 
 C. Thomas Hutchinson's Remaining Claims
 
 41
 Thomas Hutchinson contends that the district court erred by failing to take judicial notice of the "offer of proof" he filed in the 43 Case, by disqualifying his counsel, and in refusing to grant sanctions against the defendants. A district court's decision regarding the admission of evidence is reviewed for an abuse of discretion. See Old Republic Ins. Co., 144 F.3d at 1082. Thomas Hutchinson argues that the district court deprived him of procedural due process by failing to consider "documentary evidence found in the two-volume offer of proof . . . filed in [the 43 Case]." This offer of proof concerned the alleged motive of the defendants for committing fraud on the court in the 43 Case. The district court concluded that it would be inappropriate to consider the offer of proof in the 44 Case because it was prepared by Hutchinson's attorney who had been disqualified by the district court. The district court believed consideration of the offer of proof would violate the spirit of the disqualification order. In his brief, Thomas Hutchinson fails to address how this decision constituted an abuse of discretion and fails to identify evidence in his offer of proof that should have been considered, the impact of this evidence on the outcome of the case, or even why the district court should have taken judicial notice of this offer of proof. Accordingly, we find his argument on this issue to be without merit.
 
 
 42
 Thomas Hutchinson also argues that the district court's conclusion regarding the disqualification of his counsel, Joan Godlove, and the district court's failure to sanction the defendants for filing the motion to disqualify were erroneous. These conclusions are likewise reviewed under an abuse of discretion standard. See Dunn, 990 F.2d at 350; Defazio, 899 F.2d at 629. We find no abuse of discretion with respect to either of the conclusions reached by the district court.
 
 
 43
 The district court found that Godlove was a necessary witness under Rule 3.7 of the Indiana Rules of Professional Conduct. This rule provides that a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness. The commentary to Rule 3.7 also provides that the opposing party has a proper objection when the combination of roles may prejudice that party's rights in the litigation. In determining whether to disqualify counsel, a court is directed by Rule 3.7 to conduct a balancing between the interests of the client and those interests of the opposing party.
 
 
 44
 In the present case, Godlove informed the district court that it would be necessary for Thomas Hutchinson to obtain other counsel to represent him with respect to Count I of his complaint against the Bamberger defendants, which alleged that the Bamberger defendants committed acts of legal malpractice in the 1980 Case. Consistent with this notification, attorney Robert Abdalian filed a Notice of Intent to File Application for Leave to Appear Pro Hac Vice as counsel for Thomas Hutchinson as to Counts I, II, and IV. The district court found that these two events demonstrated that Godlove realized she was likely to become a witness with respect to Count I of the complaint. The district court also found that Godlove should be disqualified as to Count V as well. This count dealt with a civil RICO claim under 18 U.S.C. sec. 1961, alleging that certain defendants engaged in a pattern of racketeering activity beginning in 1966 and continuing through 1990. The district court noted that a part of the pattern of the alleged activities specifically included a telephone call to Hutchinson's attorneys in April 1990 in which Godlove participated. The district court also determined that the substance of that telephone conversation was in dispute and that it was reasonably likely that Godlove would be called to testify regarding that call. The district court concluded that these counts could not be severed from the remainder of the complaint and, therefore, Godlove would have to be disqualified as to all counts of the complaint.
 
 
 45
 The district court then balanced these determinations against the prejudice that disqualification would cause Thomas Hutchinson. The district court found that Thomas Hutchinson would not be unduly prejudiced as a result of Godlove's disqualification. The district court also recognized that "[t]he potential for Godlove to testify is apparent at an early stage of the litigation, and plaintiff has brought forward no evidence showing that Godlove possesses unique expertise or other 'distinctive value' in the types of claims at issue." Godlove's lengthy relationship with the case and her familiarity with the facts underlying Hutchinson's interest in the art collection further increased the probability that she would be called as a witness in the case. Given the relative absence of prejudice to Thomas Hutchinson resulting from the disqualification of Godlove and the balancing undertaken by the district court, we cannot conclude that the district court abused its discretion in disqualifying Godlove. Likewise, we find no merit in Thomas Hutchinson's claim that the district court abused its discretion in failing to sanction the defendants for filing the motion to disqualify.
 
 III. Conclusion
 
 46
 Based upon our determination that the doctrine of laches applied in the 1980 Case, we conclude that the district court's grant of summary judgment in favor of the defendants was appropriate. We also conclude that the district court did not abuse its discretion with respect to the evidentiary issues raised by Thomas Hutchinson or with respect to its decision granting the defendants' motion to disqualify counsel and denying Thomas Hutchinson's motion for sanctions. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Pursuant to an order dated January 5, 1998, this Court dismissed the appeal as to William Jageman, deceased, individually and as a shareholder of Jageman & McGraw, Inc., and Jageman & McGraw, Inc.