365 F.2d 232
 James Dean HAMMETT, Appellant,
v.
Charles Ernest SEASTRUNK, James Elbert Miller and Huckabee Transport Company, Appellees.
James Dean HAMMETT, James Elbert Miller and Huckabee Transport Company, Appellees,
v.
Charles Ernest SEASTRUNK, Appellant.
 No. 9873.
 No. 9874.
 United States Court of Appeals Fourth Circuit.
 Argued May 3, 1965.
 Decided August 4, 1966.
 
 Joseph B. Roberts, III, Gastonia, N. C. (Frank Patton Cooke, Gastonia, N. C. on the brief) for James D. Hammett, appellant in No. 9873 and appellee in No. 9874.
 William T. Covington, Jr., Charlotte, N. C. (J. Donnell Lassiter, Charlotte, N. C., on the brief) for James Elbert Miller and Huckabee Transport Company, appellees in Nos. 9873 and 9874, and Wade W. Mitchem, Gastonia, N. C. (Robert H. Forbes, Gastonia, N. C., on the brief) for Charles Ernest Seastrunk, appellee in No. 9873 and appellant in No. 9874.
 Before BOREMAN and J. SPENCER BELL, Circuit Judges, and LEWIS, District Judge.
 BOREMAN, Circuit Judge.
 
 
 1
 These appeals arise from a series of bizarre and unfortunate automobile accidents in which nine vehicles, including those of the parties hereto, were involved in collisions in an unusually dense bank of fog. James Dean Hammett, the driver of one of the automobiles, brought suit to recover damages for his personal injuries and property loss[1] in the Superior Court of Gaston County, North Carolina, against Charles Ernest Seastrunk, Huckabee Transport Company, and the latter's employee-driver, James Elbert Miller. The action was removed to the United States District Court below by defendants Huckabee and Miller. Defendant Seastrunk filed a counterclaim against Hammett for his own personal injuries and property damages. Following trial of the case by the court without a jury, judgment was entered denying recovery to both Hammett and Seastrunk. Both parties appealed.[2]
 
 
 2
 The collisions occured on October 17, 1962, at about 7:30 a. m., on U. S. Highway 74 west of Gastonia, North Carolina. Route 74 is a divided highway with two eastbound and two westbound traffic lanes separated by a fairly wide median strip of grass. All nine vehicles involved in the accident were traveling in the eastbound lanes toward Gastonia. Generally, it was a dry, sunny day and visibility was good. However, a bank, curtain or "streak" of unusually dense fog had settled completely across the eastbound lanes at the crest of a slight rise in the highway. The District Court found that the fog entirely obscured visibility beyond a distance of approximately ten feet. While there was testimony that the streak of fog could be seen by motorists approaching in the eastbound lanes as far as three hundred to five hundred yards away from the crest of the rise, all three of the drivers here involved admitted that they did not observe the fog until they entered it or were directly upon it. The court found that, in any event, the density of the fog could not be perceived by an approaching motorist until he was very close upon or into the bank and that, except for the fog, none of the drivers involved was traveling at a speed greater than was reasonable on this bright, sunny morning.
 
 
 3
 It appears that the first of the nine vehicles to enter the fog was an unidentified dump truck. This was followed by a 1951 Dodge automobile driven by one Collins, who testified that when he first saw the dump truck it was a very short distance directly in front of him. The court found that Collins ran into the rear of the dump truck and that almost immediately his vehicle was struck in the rear by the Huckabee tractor-trailer driven by Miller. Miller testified that he did not see the Collins automobile until he was eight to ten feet away and that, upon sighting the Collins car, he applied his brakes and turned to the left. The force of the tractor-trailer's collision with Collins' car propelled the latter vehicle to the left where it came to rest on the median strip. The Huckabee tractor-trailer was halted predominantly in the eastbound left lane. However, it was turned at such an angle that the right rear end extended across the broken dividing line between the eastbound lanes into the right lane a distance of one to two feet. The dump truck left the scene of the accident.
 
 
 4
 The District Court found that the next car to happen upon the scene was probably a 1955 Chevrolet station wagon driven by one Richardson which sideswiped the left rear of the Huckabee trailer and continued onto the median strip where it struck the rear of Collins' automobile. Thereafter, one Grigg drove his 1951 Plymouth into and to a considerable extent underneath the left rear of the Huckabee trailer.
 
 
 5
 The next car to enter the fog bank was that of the plaintiff, Hammett. The court found that he collided with the Huckabee trailer, damaging the left side of his 1960 Ford, and that immediately thereafter his car was struck from the rear by Seastrunk's 1962 Ford Falcon station wagon. This collision propelled Hammett's car away from the right rear end of the Huckabee trailer and along the right side thereof where it finally stopped when its left front end struck the side of the trailer. Seastrunk's automobile continued onward and collided with the rear of the trailer.
 
 
 6
 The foregoing occurrences may appear to be almost incredible but the wreckage was not yet complete. A 1956 Chevrolet driven by one Turner ran into the rear of the Seastrunk car very shortly after the collision between the Seastrunk and Hammett automobiles. The last of the nine vehicles, a 1954 Ford driven by one Cobb, sideswiped the left rear of the Grigg Plymouth and came to a stop on the median strip.
 
 
 7
 On the foregoing facts, the trial judge concluded that the collisions were unavoidably accidental and that there was no liability on the defendants or the plaintiff. The judge did find that Hammett, Seastrunk and Miller were all equally negligent in failing to see the fog until they were virtually upon it or in it since, in the exercise of due care, the fog could have been seen from some distance away; however, he held that this negligence was not the proximate cause of the collisions since, even if the parties had observed the fog before encountering it, they could not reasonably have been expected to foresee or anticipate the danger which it presented. In the judge's words,[3]
 
 
 8
 "* * * A reasonably prudent motorist, on a bright, sunny October morning, who sights a strip of fog across the roadway in front of him, and who is traveling at a speed of from 35 to 45 miles an hour, would not reasonably foresee that such an isolated streak of fog would be so dense and so extended in depth as to constitute a serious roadway hazard at such a speed. It is common experience that low-lying fog on otherwise bright and sunny days is seldom of sufficient density or depth to seriously impede vision. The law does not require omniscience. With hindsight, it is easy to see that none of the motorists involved should have entered this fog and should have stopped and waited until it lifted. But to hold that the law requires such extreme caution is to ignore the essential element of foreseeability and to be unrealistic.
 
 
 9
 * * * * * *
 
 
 10
 "In my judgment, all concerned were the victims of pure accident brought about by the phenomenon of a dense strip of ground fog in an otherwise clear and sunny atmosphere."
 
 
 11
 The court held, in the alternative, that if the unusual density and breadth of the fog were foreseeable, Hammett, Seastrunk and Miller were all three guilty of negligence which contributed to the accidents and therefore neither Hammett nor Seastrunk could recover their damages. We think the judgments should be affirmed.
 
 
 12
 Hammett's primary attack is leveled at the court's finding that Miller, the Huckabee truck driver, was not guilty of actionable negligence. Hammett contends that Miller, by his own testimony, continued to operate the tractor-trailer in the dense fog for a distance of 200 to 250 feet despite the fact that his visibility was admittedly limited to eight to ten feet and that he knew that he could not stop his heavily loaded vehicle within that distance. This contention is based upon Miller's conduct after he had perceived and entered the fog rather than his failure to see it which failure the court held was not the proximate cause of Hammett's injury. However, it is by no means clear that Hammett's own conduct differed appreciably from that of Miller. Certainly, Hammett traveled through the fog before colliding with the Huckabee trailer but he does not attempt to state the distance traveled after he entered the fog and became aware of its density. Seastrunk estimated that he proceeded only fifteen or twenty feet into the fog bank before he hit the rear end of Hammett's automobile, which collision the District Court found had occurred "immediately" after Hammett's collision with the Huckabee trailer. However, even if we assume that Hammett did not drive any great distance through the fog before his entanglement in the wreck, we are still unable to find any clear error in the District Court's ruling that Miller was not guilty of actionable negligence.
 
 
 13
 Miller testified that he was traveling at a speed of forty to forty-five miles per hour when he entered the fog. He immediately began to slow down. His tractor-trailer was heavily loaded, carrying approximately 31,000 pounds of freight. There was no testimony as to the distance within which such a vehicle could have been brought to a stop at the speed it was traveling. Miller testified that he had slowed to ten or fifteen miles per hour when he first sighted Collins' car.
 
 
 14
 In any event, we are not persuaded that Miller was negligent in continuing to move slowly ahead through the fog. The Supreme Court of North Carolina has recognized that there is no rigid standard of care which should be exercised by a driver encountering fog, and that the reasonableness of his conduct is a question for the trier of fact. In Moore v. Town of Plymouth, 249 N.C. 423, 429, 106 S.E.2d 695, 700 (1959), that court quoted with approval the following language from 5A Am.Jur. Automobiles § 1070:
 
 
 15
 "`The precise degree or quantum of care properly exercisable by a motorist, or pedestrian, under varying atmospheric conditions, such as fog, smoke, dust, and the like, is ordinarily a question for the jury. Whether the exercise by a driver of reasonable care required a complete stop, a slowing down, or any other precautions dictated by the standard of ordinary prudence, is generally within the province of the jury to decide, in the light of all the surrounding facts and circumstances.'"
 
 
 16
 There is merit in the argument that it was more reasonable for Miller to attempt to proceed slowly forward than to bring his vehicle to a complete stop on the highway or attempt to pull blindly off the pavement onto the median strip or the shoulder. A complete stop might well increase the danger to motorists approaching from the rear and there was no way of knowing what hazards awaited in the median strip or on the shoulder of the road. Considering the general nature of the weather it was not unreasonable for Miller to think that he would emerge from the fog at any moment.
 
 
 17
 The rate of speed at which Miller continued to move forward through the fog was properly considered by the court in determining the reasonableness of his conduct. Miller admitted that at the speed of ten or fifteen miles per hour he could not stop the vehicle within his range of vision after he entered the fog. However, the inability of a driver to stop his vehicle within the range of his vision does not in itself establish negligence. See N.C.Gen.Stat. § 20-141(e) (1965 Supp.); Brown v. Hale, 263 N.C. 176, 180, 139 S.E.2d 210, 213 (1964); Forbes v. Britton, 262 N.C. 493, 137 S.E.2d 826 (1964). Whether Miller was negligent by continuing as he did into and after entering the fog bank was a question which could be answered only by weighing all the facts and circumstances and we cannot say that the court's finding on the point was erroneous.
 
 
 18
 Hammett next contends that Miller did not have the marker lights (head lamps and clearance lamps) of the Huckabee tractor-trailer burning and this failure was negligence per se in view of the statutory requirements that such lamps be turned on whenever road visability is limited. However, Miller testified that these lamps were lighted and his statement was corroborated by Seastrunk and Seastrunk's wife, who was a passenger in her husband's car at the time of the accident. Since the finding that the lights were turned on is supported by substantial evidence, we cannot say that it is clearly erroneous.
 
 
 19
 It was found by the court that Miller did fail to activate the simultaneous flashing of the rear turn signals by the use of an emergency switch with which the truck was equipped, and that he failed to set out warning flags or flares as required by statute. However, the court accepted Miller's explanation that the collision with the Collins automobile had left him in such a stunned or dazed condition that he was unable to comply with the statutory provisions. Miller's testimony as to his condition is not directly contradicted. The fact that he appeared normal to several witnesses some time after the collisions and after the fog had lifted furnishes little refutation. The trial judge credited Miller's testimony after having had the opportunity to observe him while testifying and we accept the court's finding as to Miller's inability to function normally because of his dazed condition.[4]
 
 
 20
 With respect to the defendant Seastrunk, Hammett contends without elaboration that the lower court erred in concluding that Seastrunk's failure to observe the fog and reduce his speed was not the proximate cause of the accident. As the trial court noted, the witnesses, with virtual unanimity, agreed that it was impossible to ascertain the extreme density of the fog until in it or almost upon it. Upon this testimony the court based its finding that the negligent failure of Seastrunk to see the fog and to forthwith reduce the speed of his car was not the proximate cause of the accident.
 
 
 21
 Attempting to distinguish his own conduct from that of the other drivers involved here, Hammett argues that he did not run into the rear of the Huckabee trailer, but rather was knocked into it by Seastrunk's automobile after he had seen the trailer and was attempting to pass to its right. However, Hammett alleged in his complaint that he ran into the trailer and thereafter was hit by Seastrunk. At trial, his testimony was equivocal. After testifying that he had stopped short of the trailer and was then struck by Seastrunk's car and forced into the trailer, the following exchange took place between the court and Hammett:
 
 
 22
 "COURT: * * * You can use words like `feel like' if you want to but what I want to know is what you know, if you do know. Did you hit the truck first or did somebody hit you first? If you know. If you don't know, say you don't know.
 
 
 23
 "A [Hammett] I don't know."
 
 
 24
 Seastrunk's testimony bolstered the inference that the version pleaded in Hammett's complaint was correct. The following testimony was given in response to a question as to Seastrunk's conversation with Hammett after the accident.
 
 
 25
 "Q What, if any discussion, took place between you and Mr. Hammett at that time?
 
 
 26
 "A [Seastrunk] Well, as well as I remember, Mr. Hammett told me that he was sitting in his car rubbing his arm when I hit him.
 
 
 27
 "Q Did he make any statement to you as to what, if anything, the impact of your collision did to him?
 
 
 28
 "A No.
 
 
 29
 "Q Did he make any statement to you as to why he was rubbing his arm at that time?
 
 
 30
 "A It seemed to be he said he was somewhat dazed by the * * *
 
 
 31
 * * * * * *
 
 
 32
 "A He seemed to be somewhat dazed at the suddenness of all of the accident."
 
 
 33
 There is ample support for the court's finding that Hammett drove into the Huckabee trailer before being hit by Seastrunk.
 
 
 34
 Seastrunk contends in his brief in support of his counterclaim against Hammett that Hammett saw the Huckabee trailer, brought his car to a stop without colliding with it and negligently permitted his non-disabled vehicle to block the highway; that it was this action, or inaction, which was the proximate cause of the Seastrunk-Hammett collision. Seastrunk's argument is unpersuasive as it is inconsistent with that version of the facts supported by his own above quoted trial testimony and adopted by the court, that is, that Hammett collided with the Huckabee trailer before he was hit by Seastrunk.
 
 
 35
 Affirmed.
 
 
 36
 Motion to dismiss Seastrunk's appeal denied.
 
 
 
 Notes:
 
 
 [1]
 Hammett's property loss claim is limited to $100.00, his collision insurer having adjusted the remainder of his property damages. The collision insurer has not joined in this suit
 
 
 [2]
 Hammett moved to dismiss Seastrunk's appeal on the ground that Seastrunk had failed to file his brief within the time fixed by the rules of this court. The motion is hereby denied, no prejudice to Hammett by reason of the late brief filing being asserted or shown and the court having elected to consider and determine these appeals together on their merits
 
 
 [3]
 The lower court's memorandum decision has not been reported
 
 
 [4]
 Miller's condition immediately after the accident would account for his failure to remove the tractor-trailer from the highway even if that vehicle had not been so damaged as to be immovable. Several witnesses stated their opinions that the vehicle was not operable after the accident