**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 4 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

THOMAS R. HUTCHINSON,

        Plaintiff-Appellant,

v.

MARY JOAN PFEIL; ART
SERVICES INTERNATIONAL,
INC.; WILLIAM H. GERDTS;
DAVID BERNARD DEARINGER;
SOUTH CHINA PRINTING
COMPANY; RICHARD B. PFEIL;
SONA JOHNSTON,

        Defendants-Appellees.

No. 98-5260

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA
### (D.C. No. 94-CV-711-E)

Submitted on the briefs:

Glenn R. Beustring, Joan Godlove, and Todd Alexander, Tulsa, Oklahoma, for
Plaintiffs-Appellants.

Lewis N. Carter of Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa,
Oklahoma, for Defendants-Appellees.

Before **EBEL**, **LUCERO**, and **MURPHY**, Circuit Judges.

**MURPHY** , Circuit Judge.

Plaintiff Thomas R. Hutchinson appeals [1] from the dismissal of his suit under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for lack of standing. He also challenges certain procedural rulings issued in the course of the proceedings. Joining in his notice of appeal are Hope Cobb, whose motion to intervene in district court was denied, and several individuals whom Mr. Hutchinson proposed to add as plaintiffs when he unsuccessfully moved to amend his pleadings. For reasons stated below, we dismiss the appeals of Ms. Cobb and those proposed plaintiffs, deny their joint motion to intervene in the Hutchinson appeal, and affirm all of the rulings challenged by Mr. Hutchinson.

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted on the briefs without oral argument.

Mr. Hutchinson insists that we should not consider appellees' answer brief, because it was filed six days after the deadline set by Fed. R. App. P. 31(a)(1). It is, however, always within this court's discretion to permit the late filing of a brief for good cause. _See_ Fed. R. App. P. 26(b). The exercise of that discretion is especially appropriate here, as there is no suggestion of prejudice. _See_ _Hammett v. Seastrunk_ , 365 F.2d 232, 233 n.2 (4th Cir. 1966). Mr. Hutchinson himself tested the forbearance of this court by filing a deficient opening brief four days after a twice-extended deadline. This court thus finds good cause to allow the filing of appellees' answer brief.

## Cobb's Appeal from Denial of Intervention

The district court denied Hope Cobb's motion to intervene on February 27, 1998. She did not attempt to appeal that order until she joined Mr. Hutchinson's notice of appeal from the final judgment entered over eight months later.

"An order denying intervention is final and subject to immediate review if it prevents the applicant from becoming a party to an action." *Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Department of the Interior*, 100 F.3d 837, 839 (10th Cir. 1996). This is "because denial of intervention precludes the proposed intervenor's ability to appeal the later judgment (and at that time to challenge the earlier denial of intervention)." *B.H. ex rel. Pierce v. Murphy*, 984 F.2d 196, 199 (7th Cir. 1993). Thus, an appeal from the denial of intervention "cannot be kept in reserve; it must be taken within thirty days of the entry of the order, or not at all." *Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.*, 78 F.3d 698, 703 (1st Cir. 1996); *see Hunter v. Department of the Air Force Agency*, 846 F.2d 1314, 1316-17 (11th Cir. 1988) (distinguishing final order denying intervention from appealable interlocutory orders for which immediate review in lieu of appeal from final judgment is optional); *see, e.g.*, *B.H. ex rel. Pierce*, 984 F.2d at 199; *United States EPA v. City of Green Forest*, 921 F.2d 1394, 1401 (8th Cir. 1990); *Marks v. U.S. West Direct*, No. 98-1043, 1998 WL 856139, at **1 (10th Cir. Dec. 11, 1998) (unpublished), *cert. denied*, 119 S. Ct. 1757 (1999). Ms. Cobb's

appeal is therefore untimely and must be dismissed. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 203 (1988) ("the taking of an appeal within the prescribed time is mandatory and jurisdictional").

**Proposed Plaintiffs' Appeal**

After the case had been pending in district court for some time, Mr. Hutchinson filed a motion to amend his pleadings to, among other things, add several new plaintiffs under Fed. R. Civ. P. 21. The proposed plaintiffs did not themselves invoke the power of the court by, for example, moving to intervene under Fed. R. Civ. P. 24. Thus, they are not parties to the action nor have they affirmatively sought and been denied such status.

"A nonparty does not have standing to appeal in the absence of most extraordinary circumstances." *Coffey v. Whirlpool Corp.*, 591 F.2d 618, 619 (10th Cir. 1979) (insurer lacked standing to appeal where district court denied insured's motion to vacate dismissal to permit substitution of insurer as plaintiff). Such circumstances are clearly not present here. Indeed, two distinct considerations undercut the proposed plaintiffs' appellate standing. The first is their indirect, passive relationship to the proceedings conducted in district court. To paraphrase an apt, albeit non-precedential, statement of the Second Circuit, expressly relying on our *Coffey* decision in a similar case: the plaintiff--not the proposed plaintiffs--moved to amend his complaint, and he--not they--is the

-4-

proper party to appeal the denial of that motion. *See Kahn v. Chase Manhattan Bank, N.A.*, Nos. 97-7213, 97-7233, 1997 WL 734139, at **2 (2d Cir. Nov. 25, 1997) (unpublished). The second consideration relates to the proposed plaintiffs' lack of a substantive interest in the outcome. Because the action was dismissed based on Mr. Hutchinson's lack of standing and thus without any ruling on the merits, the proposed plaintiffs are in the same position as the non-party denied appellate standing in *Coffey*: "no requirement is imposed upon [the proposed plaintiffs] to do anything" to preserve their claims; the dismissal by the court was without prejudice to their interests. *Coffey*, 591 F.2d at 619.

### Appellate Intervention

Ms. Cobb and the proposed plaintiffs also moved to intervene on appeal, in case their joinder in the notice of appeal filed by Mr. Hutchinson was ineffective. We deny the motion for reasons peculiar to each movant. As for Ms. Cobb, the motion is, in effect, an attempt to obtain appellate review lost by her failure to timely appeal the denial of her motion to intervene in district court. Appellate intervention is not a means to escape the consequences of noncompliance with traditional rules of appellate jurisdiction and procedure. *See, e.g.*, *United States v. Dorfman*, 690 F.2d 1217, 1223 (7th Cir. 1982) (defendants who prematurely appealed suppression order "cannot circumvent the rule against . . . interlocutory appeal" by intervening in third-party appeal); *United States v. Ahmad*, 499 F.2d

851, 854 (3d Cir. 1974) (party who failed to file notice of appeal "cannot circumvent the requirements for taking an appeal in his own right by a later petition for intervention" in another's appeal).

The proposed plaintiffs lacked standing to obtain direct appellate review and, thus, do not seek intervention to excuse a failure to perfect a proper appeal. Their request, however, is undercut by a different omission. As noted above, they never moved to intervene in the district court. "'A court of appeals may, but only in an exceptional case for imperative reasons, permit intervention where none was sought in the district court.'" *Hall v. Holder*, 117 F.3d 1222, 1231 (11th Cir. 1997) (quoting *McKenna v. Pan Am. Petroleum Corp.*, 303 F.2d 778, 779 (5th Cir. 1962)); *see Bates v. Jones*, 127 F.3d 870, 873 (9th Cir. 1997); *Amalgamated Transit Union Int'l v. Donovan*, 771 F.2d 1551, 1552 (D.C. Cir. 1985). Nothing stated in their conclusory motion or inherent in the surrounding circumstances suggests the requisite justification for the proposed plaintiffs' intervention on appeal.

### Hutchinson's Standing to Sue

On summary judgment, the district court held that Mr. Hutchinson could not satisfy the requirements for standing under the Lanham Act set out by this court in *Stanfield v. Osborne Industries, Inc.*, 52 F.3d 867 (10th Cir. 1995). On de novo review, *see Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d

590, 593 (10th Cir. 1996), we reach the same conclusion. Further, we hold that

the standing deficiencies implicate the limitations of Article III of the

Constitution.

> Plaintiffs bear the burden of proving standing with the manner
> and degree of evidence required at the particular stage of the
> litigation. In response to a summary judgment motion, the
> nonmovant must present specific facts by affidavit or other evidence,
> which will be taken as true for purposes of the motion. Summary
> judgment is then proper if there is no genuine issue of material fact
> so that the moving party is entitled to judgment as a matter of law.

*Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995) (citations omitted); *see*

*Cache Valley Elec. Co. v. State of Utah Dep't of Transp.*, 149 F.3d 1119, 1124

(10th Cir. 1998) ("[a]t summary judgment, it is a plaintiff's burden to adduce

evidence sufficient to establish necessary jurisdictional facts" and, thus, plaintiff

"may not establish standing by merely hypothesizing"), *cert. denied*, 119 S. Ct.

1333 (1999).

Mr. Hutchinson is a descendant of nineteenth century American

Impressionist artist Theodore Robinson, who painted a work owned by defendants

Richard and Mary Joan Pfeil, entitled E.M.J. Betty.[2] Mr. Hutchinson contends

that the Pfeils' painting is actually an unfinished version with a forged signature,

and that he has an ownership interest in a finished "real" E.M.J. Betty, allegedly

---

[2]

After entry of judgment, the Pfeils sold the E.M.J. Betty. The sale does not affect our analysis and, for simplicity, we continue to refer to it as the Pfeils' painting.

-7-

stolen after the artist died in 1896. The thrust of Mr. Hutchinson's Lanham Act claim is that by representing their painting as a finished version of the Robinson work in an exhibition catalogue, the Pfeils have "use[d] in commerce [a] . . . false designation of origin, false or misleading description of fact, or false or misleading representation of fact," in violation of 15 U.S.C. § 1125(a)(1). The other defendants are the corporations which produced and printed the catalogue, and the art historians whose professional work was used for the E.M.J. Betty annotation therein.

"There are two distinct bases for liability under section 1125: (1) false representation in advertising concerning the qualities of goods (false advertising claims); and (2) false representations concerning the origin or endorsement of goods (false association or product infringement claims)." *Stanfield*, 52 F.3d at 873. Each requires an injury sufficient to confer standing, with the type of harm dependant on the focus of the claim. For a false advertising claim designed to prevent unfair competition, the plaintiff "must be a competitor of the defendant and allege a competitive injury;" for a false association claim designed to prevent product misidentification, the plaintiff must allege a "reasonable interest to be protected" in the subject goods or services, or in the misused mark causing a misidentification. *Id.*

The district court's standing analysis rested on "the undisputed fact that Plaintiffs [3] . . . do not have the 'real E.M.J. Betty,' have never seen the 'real E.M.J. Betty' or a copy of the 'real E.M.J. Betty' and do not know who is in possession of the 'real E.M.J. Betty.'" Appellant's Appendix Vol. II (App. II) at 450. In fact, "they do not know that the 'real E.M.J. Betty' exists at this time." *Id.* at 451. The court concluded that even if Mr. Hutchinson could establish, in some abstract sense, an ownership interest in the posited "real" E.M.J. Betty , the compounded uncertainties inherent in any concrete realization of that interest rendered the potential for harmful competition from defendants' rival painting too speculative to confer standing for a false advertising claim. We agree. In the commercial language of *PDK Lab., Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997), Mr. Hutchinson's "hopes of eventually obtaining . . . a [competitive] product are too remote at this stage to confer standing to challenge [the Pfeils'] advertising." *Id.* at 1112 (plaintiff's proposed rival product, undeveloped and contingent upon future FDA approval, held insufficient to support Lanham Act standing). Further, his inability to compete with the Pfeils' painting is not itself a function of the alleged misconduct. *Cf. Stanfield*, 52 F.3d at 873 (plaintiff's unrealized plans to compete with defendant held insufficient to confer standing

---

[3]     The district court refers here to "plaintiffs," as this action was initially prosecuted jointly by Mr. Hutchinson and his wife, who has since died.

where his entrance into market was "in no way dependent on the availability of [the] trademark" allegedly misused by defendant).

The same uncertainties which undercut Mr. Hutchinson's false advertising claim also undermine his false association claim. [4] With no present prospect of locating an extant finished work with which the Pfeils' painting has allegedly been misidentified, "he has no reasonable interest to be protected under the Lanham Act," and "[w]ithout a protectible interest, [he] lacks standing to bring this [false association] claim under section 1125." *Id.* (noting "mere potential of commercial interest in one's family name is insufficient to confer standing" for false association claim). [5]

---

[4] Although the broadly framed pleadings potentially encompass both types of Lanham Act violations, the district court refused to consider the false association claim because Mr. Hutchinson did not refer to it until late in the proceedings. Hence, the court did not address the standing issue on that claim. Given the fundamental nature of the issue, we elect to resolve the entire case on standing grounds and therefore need not delve into the parties' dispute over the timeliness of Mr. Hutchinson's specific assertion of the false association claim. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-102 (1998) (discussing analytical priority of standing questions).

[5] Cases holding that an artist incurs injury when his name or work is misused are inapposite. *Cf., e.g.*, *King v. Innovation Books*, 976 F.2d 824, 829, 831 (2d Cir. 1992); *Wildlife Internationale, Inc. v. Clements*, 591 F. Supp. 1542, 1548 (S.D. Ohio 1984). Neither Mr. Hutchinson's name nor any work of his has been misused.

Indeed, the utterly speculative character of Mr. Hutchinson's interest and consequent injury not only undercuts statutory standing under the Lanham Act, but constitutes a fundamental Article III deficiency as well.

> The irreducible constitutional minimum of standing contains three requirements. First and foremost, there must be alleged (and ultimately proved) an injury in fact--a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be causation--a fairly traceable connection between the plaintiff's injury and the complained-of conduct. And third, there must be redressability--a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.

*Steel Co.*, 523 U.S. at 102-04 (footnote, citations, and quotations omitted).

Mr. Hutchinson was unable to show that the alleged "real" E.M.J. Betty exists, let alone that he will likely locate the painting and obtain it from any current possessor. His claim of injury rests on "conjecture based on speculation that is bottomed on surmise," and cannot support federal jurisdiction under Article III. *Utah v. Babbitt*, 137 F.3d 1193, 1210 n. 25 (10th Cir. 1998) (quotation omitted) (future injury, contingent on matters "not presently known," too speculative for Article III standing); *see United Transp. Union v. ICC*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative . . . predictions of future events . . . ."); *see also Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 56 (1st Cir.

-11-

1998) ("Outside the sphere of economic theory, predicting future injury and the behavior of third parties is usually suspect.").  For essentially the same reasons, a remedial order curtailing the Pfeils' use of the E.M.J. Betty name would not at present--or likely in future--inure to Mr. Hutchinson's benefit, so his action fails under the redressibility prong as well.  *See Wyoming ex rel. Sullivan v. Lujan*, 969 F.2d 877, 882 (10th Cir. 1992) (plaintiff lacks standing where possible benefit from favorable ruling "founders on too many contingencies").

Finally, Mr. Hutchinson contends the absence of demonstrable injury or likely threat of harm is not preclusive with respect to injunctive relief, when the objectionable representations are not just misleading but patently false.  In support of this argument, he relies on two lines of authority, neither of which is apposite here.  First, he cites several cases holding that the literal falsity of the defendant's statements obviates the need to present proof regarding likely deception or confusion of the consumer.  This principle, dubbed the "presumption of deception" by one court, relates to the merits of the case, not the standing of the plaintiff to seek redress for such statements.  *See Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1333 (8th Cir. 1997) (noting "presumption of deception" allows factfinder "to assume actual deception, the second element of the cause of action"); *see also Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1138 (4th Cir. 1993) (holding representation "false on its face" or "likely to mislead" is "essential

-12-

element" of Lanham Act violation); *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993) (explaining literal falsity and likely confusion "are two different theories of recovery" under Lanham Act). Thus, the cases do not invoke this "presumption of deception" to resolve standing issues, but instead to assess the merits of Lanham Act claims, usually asserted by manufacturers of competing products whose obvious standing is not in question.

The second line of authority involves a "presumption of causation and injury" that allows a factfinder to presume injury caused by representations which are literally false or demonstrably deceptive. *See Porous*, 110 F.3d at 1333; *see also McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991); *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 16, 18 (7th Cir. 1992). As these cases reflect, this presumption is likewise invoked primarily to resolve the merits of Lanham Act claims--to establish injury as an essential element of the claim, or irreparable harm as a condition for injunctive relief--when the plaintiff, typically a commercial competitor of the defendant, clearly has standing. Such cases merely support the proposition that when a plaintiff *with an otherwise sufficient interest to have standing* shows that its interest has been subjected to patently false representations, harm sufficient to sustain a claim and justify equitable relief may be presumed.

We recognize that the merits issue to which this second presumption relates does overlap conceptually with the injury prerequisite for standing, and the presumption has been discussed, albeit rarely and unfavorably, in that connection. *See Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694-95 (2d Cir. 1994) (considering but rejecting presumption in affirming dismissal of Lanham Act claim for lack of standing); *see also PDK Lab.*, 103 F.3d at 1112 (citing *Ortho* as "applying the general rule . . . against making presumptions of injury and causation to Lanham Act standing question" (quotation omitted)). In any event, the presumption is properly limited to circumstances in which injury would indeed likely flow from the defendant's objectionable statements, i.e., when the defendant has explicitly compared its product to the plaintiff's or the plaintiff is an obvious competitor with respect to the misrepresented product. *See Ortho*, 32 F.3d at 694; *Porous*, 110 F.3d at 1335. Clearly neither of these conditions exists here. Mr. Hutchinson's standing is deficient precisely because *he has no product in competition with the Pfeils' painting*.

A demonstration that the Pfeils' representations were patently false would not avail Mr. Hutchinson in this case. It might assist his Lanham Act claims on the merits, by obviating the need for proof of consumer confusion. Because he lacks a cognizable interest affected by such confusion, however, he still lacks standing to assert such claims in federal court.

## Denial of Amendment

Mr. Hutchinson contends the district court abused its discretion when it refused to permit him to amend his pleadings to add a state tort law claim for negligent misrepresentation. The district court cited delay and the inapt procedural posture of the case, after summary judgment had already been granted on standing, as the grounds for denying leave to amend. *See* App. II at 521-22; App. III at 845. We do not question the soundness of this exercise of discretion,[6] but we deem it appropriate to affirm the denial of the attempted amendment on the more fundamental ground of standing.

"Standing [under Article III] is, of course, a threshold issue in *every case* before a federal court," and diversity claims are no exception. *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1126 (8th Cir. 1998) (emphasis added); *see also Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994). Thus, the jurisdictional deficiency discussed above in connection with the Lanham Act would be equally fatal to the proposed negligent misrepresentation claim, which rests on the same speculative injury. Because Mr. Hutchinson lacked standing to

---

[6]    We note in this regard the speciousness of Mr. Hutchinson's procedural objection that the district court "[mis]led counsel to believe it would defer ruling on [summary judgment] until after a scheduling conference was conducted and a scheduling order entered," lulling him into believing amendment could safely be postponed. Opening Brief at 39. The court, in fact, conducted the conference, set summary judgment for a subsequent hearing, and explained that further scheduling would proceed only if needed. See docket entry for July 21, 1995.

assert this new claim and does not argue that adding the "proposed plaintiffs" cured this deficiency, his futile amendment was properly rejected in any event. *See TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) ("Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted.") (quotation omitted); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993) (rejecting as futile proposed amendment of claim plaintiffs lacked standing to assert).

## Case Reassignment

Mr. Hutchinson argues that the district judge who entered judgment in this case lacked authority to hear and decide it, because it had been transferred unilaterally from another judge of the district in a manner not expressly authorized by the local rules, specifically N.D. Okla. L. R. 40.1 (Assignment of Cases). This court recently rejected essentially the same objection in a criminal case, explaining:

> In light of this [judicial] discretion in managing court business [derived from 28 U.S.C. § 137 and Fed. R. Crim. P. 57(b)[7]], we agree with the Fifth Circuit that: "[d]istrict judges may by *rule, order or consent* transfer cases between themselves. . . . Each judge of a multi-district court has the same power and authority as each other judge. . . . Moreover, the District Judges have the inherent power to transfer cases from one another for the expeditious administration of justice." United States v. Martinez, 686 F.2d 334, 338 (5th Cir.

---

[7] In the present civil context, Fed. R. Civ. P. 83(b) is to the same effect.

-16-

1982) (quoting United States v. Stone, 411 F.2d 597, 598 (5th Cir. 1969)) (emphasis added).

*United States v. Diaz*, 189 F.3d 1239, 1244 (10th Cir. 1999). Further, nothing in Local Rule 40.1, which deals with the initial assignment of cases to judges in the district, proscribes or limits the traditional discretionary power of intra-district transfer recognized in *Diaz*. Finally, not only was the reassignment within the discretion of the district court, Mr. Hutchinson has failed to allege that the reassignment resulted in any constitutionally cognizable prejudice. *See id.* at 1244-45.

## Protective Order

Finally, Mr. Hutchinson challenges the district court's refusal to modify or vacate a protective order entered by the magistrate judge covering testimony and materials obtained through discovery in connection with this and related litigation. Mr. Hutchinson has raised this same objection in more than one appeal and, recently, another panel of this court expressly affirmed the challenged order. *See Hutchinson v. Pfeil*, No. 98-5043, 1999 WL 1015557, at **5-**7 (10th Cir. Nov. 9, 1999). Although that decision was not published, it is nevertheless "binding . . . under the doctrines of res judicata, and collateral estoppel." 10th Cir. R. 36.3(A); *see Miller v. American Trust Ins. Co.*, 931 F.2d 703, 705 (10th Cir.1991) (quoting prior version of Rule 36.3).

-17-

**Motions**

There are two contested procedural matters on appeal yet to be resolved. First, defendants have submitted as supplemental authority the Seventh Circuit's recent decision in *Hutchinson v. Spanierman*, 190 F.3d 815 (7th Cir. 1999), holding Mr. Hutchinson barred by laches from claiming an interest in a collection of Thomas Robinson paintings long held by other descendants of the artist. Mr. Hutchinson has moved to strike the supplemental authority under Fed. R. App. P. 28(j), as irrelevant and argumentative. He has also submitted a request that we take judicial notice of the petition for rehearing now pending in the case. Neither party indicates whether an E.M.J. Betty, finished or unfinished, was ever included in the collection addressed by the *Spanierman* decision. In any event, because our analysis of Mr. Hutchinson's standing does not depend on legal ownership issues but, rather, the practical unavailability of the painting, Spanierman is immaterial to our holding. The motion to strike and request to take judicial notice are therefore denied as moot.

Second, as noted above, the Pfeils sold their E.M.J. Betty, and now Mr. Hutchinson has submitted a request that this court conduct proceedings to determine the identity of the undisclosed purchasers, so that he can add them as appellees. Mr. Hutchinson's lack of standing, which is dispositive of this case,

-18-

does not turn on the identity of the present owners of the Pfeils' E.M.J. Betty . His request is therefore denied.

## Conclusion

The appeal of intervenor-appellant Hope Cobb is DISMISSED as untimely. The appeal of the proposed plaintiffs-appellants is DISMISSED for lack of appellate standing. With regard to the appeal of plaintiff-appellant Thomas R. Hutchinson, the judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED in all respects. For reasons explained above, all pending motions are DENIED.