DAVID T. SCHULTZ, United States Magistrate Judge
INTRODUCTION
This Order pertains to the Court's sua sponte Order to Show Cause, on which a hearing was held March 8, 2019. Specifically, this Order addresses whether counsel[1] for ecoNugenics, Inc., is in contempt of court for filing this action in seeming contravention of the Court's prior orders in Case No. 17-cv-5378.[2] In addition, this order further addresses the Court's previous award of attorneys' fees under Fed. R. Civ. P. 41(d) and Plaintiff's objections regarding the amount of that award. As set forth below, counsel for ecoNugenics are not held in contempt of court; the Court does award $ 84,763.00 in attorneys' fees under Rule 41(d).
PROCEDURAL HISTORY AND FINDINGS OF FACT
This patent-infringement action[3] was filed on February 13, 2019 and originally assigned to District Judge Eric C. Tostrud and Magistrate Judge Elizabeth Cowan Wright. Clerk's Notice of Initial Case Assignment, Docket No. 3. Following Defendant's filing of Notice of Related Case, and over the strenuous objection of ecoNugenics' counsel, this matter was reassigned to District Judge Joan N. Ericksen and the undersigned Magistrate Judge on February 21, 2019. Order, Feb. 21, 2019, Docket No. 10. This Court sua sponte issued an Order to Show Cause why counsel for ecoNugenics should not be held in contempt of court for willful and continued disobedience to court orders. Order to Show Cause, Docket No. 13. The reason for the Court's sua sponte order is readily apparent from the procedural history of this matter, which is set forth in detail below.
I. Procedural History
ecoNugenics filed its first patent-infringement complaint against Bioenergy Life Science, Inc. ("Bioenergy"), Chengzhi Life Sciences Company, Ltd. ("Chengzhi"), and Zhejiang Gold Kropn Biotechnology *1085 Co., Ltd. ("Zhejiang"), in December 2017. Complaint, No. 17-cv-5378 (D. Minn. Dec. 7, 2017), Docket No. 1. In that complaint ecoNugenics alleged that Defendants directly and indirectly infringed six United States Patents[4] relating to the administration of Modified Citrus Pectin (MCP) to mammals, particularly humans, to treat various conditions. Id. In its original complaint, ecoNugenics alleged that while MCP per se is not patentable, certain methods of administering it to patients are patentable:
MCP does not require a prescription or a Doctor's support. Accordingly, individuals have purchased the inferior MCP made available by BLS and administered it to themselves for ... detoxification of toxins and heavy metals, enhancing immune support, reducing inflammation ..., reducing fibrosis ... and the like. These individuals infringe the claims of the ecoNugenics' patents with the inducement and contribution of BLS, Chengzhi, and Gold Kropn.[5]
Id. at ¶ 27.
In addition, ecoNugenics alleged that "[c]omparative testing by qualified laboratories confirmed that ... the [MCP sold by] the Defendants is 'certainly not MCP with the ability to enter mammalian circulation and bind heavy metals and galectin-3 in the blood.' " Id. at ¶ 17.
On March 22, 2018, Bioenergy[6] moved to dismiss ecoNugenics' complaint against it, arguing, inter alia, that the complaint failed to plead plausible claims of patent infringement because the allegations in paragraph 17 conclusively established non-infringement and those in paragraph 27 asserted only indirect infringement. Mem. in Supp. Mot. to Dismiss, No. 17-cv-5378 (D. Minn. Feb. 2, 2018), Docket No. 28. In addition, Bioenergy moved to dismiss on grounds of unpatentable subject matter, id. , in response to which ecoNugenics moved for summary judgment in its favor on the question of patentable subject matter. Mot. for Partial Summ. J., No. 17-cv-5378 (D. Minn. Feb. 22, 2018), Docket No. 33.
By Order dated September 4, 2018, the Court dismissed the complaint against Bioenergy:
The allegation [in paragraph 17] that the sample of Bioenergy's product that was tested is not MCP with the ability to enter mammalian circulation and bind heavy metals and galectin-3 in the blood renders ecoNugenics' infringement claims implausible.
Order at 13, No. 17-cv-5378 (D. Minn. Sept. 4, 2019), Docket No. 52. Because Bioenergy's MCP could not perform the function of entering mammalian blood circulation and binding heavy metals and galectin-3, as claimed by the six patents, there could be no infringement.
The Court further noted that:
In addition, the asserted patents recite administration of modified pectin. ecoNugenics alleged that the purchasers of Bioenergy's product administer the product to themselves.
*1086 Id. Accordingly, the Court held, there was no plausible claim of direct infringement by Bioenergy, and because direct infringement is predicate to the claims of contributory or induced infringement, ecoNugenics had also failed to allege against Bioenergy any plausible claim of indirect infringement. Id. at 13-15. Because the Court found ecoNugenics had failed to plausibly plead infringement, it declined to address Bioenergy's claim that the asserted patents were invalid as claiming non-patentable subject matter, and denied ecoNugenics' motion for summary judgment on the question of patentable subject matter. Id. at 15-16.
Twenty days later, in apparent response to the Court's order, ecoNugenics filed a separate action alleging infringement of five of the same six patents by the same three defendants based on the same MCP product. This "new" action, No. 18-cv-2733, was randomly assigned to a different District Judge and Magistrate Judge than the original action. Clerk's Notice of Initial Case Assignment, No. 18-cv-2733 (D. Minn. Sept. 24, 2018), Docket No. 3. In the new complaint (Complaint No. 2),[7] ecoNugenics deleted the factual allegations in paragraphs 17 and 27 on which its prior complaint had foundered, replacing them with new allegations. Complaint No. 2 ¶¶ 20, 31, No. 18-cv-2733, Docket No. 57. Specifically, paragraph 20 of Complaint No. 2 (apparently included in lieu of paragraph 17 of Complaint No. 1 that had alleged Bioenergy's MCP could not enter mammalian circulation and bind heavy metals and galectin-3) asserted that:
Each of the patents asserted in this suit discloses that the MCP may be administered to patients as recited in the claims through different methods .... While oral administration is generally preferred ..., being able to administer the MCP intravenously, or through other methods, allows the administration of MCP of varying character for the purpose of treating a mammal such as a human for conditions such as immune support, toxin elimination, reduction or inhibition of fibroses, reduction or inhibition of inflammation and the like. MCP products are provided by ... BLS in dosage formats intentionally prepared to encourage administration and self-administration of MCP by customers of BLS.
Paragraph 31 of Complaint No. 2, seemingly a replacement to the prior paragraph 27, alleged that Bioenergy "directly infringes the claims of the asserted patents by administering and providing MCP to others for the purposes recited in the claims of the asserted patents and induces infringement by other direct infringers." Whereas Complaint No. 1 had alleged Bioenergy's customers administered the MCP to themselves, Complaint No. 2 alleged that Bioenergy itself "administered" MCP to customers by selling it to them. Thus, in Complaint No. 2 ecoNugenics used the term "administer" to mean "make available," thereby changing its factual allegations so as to assert direct, rather than indirect, infringement.
Because the Court's September 4, 2018 Order granting Bioenergy's motion to dismiss had not disposed of the entire action, Complaint No. 2 was deemed a related case to the original action and was re-assigned to the original District and Magistrate Judges. See Dkt. No. 53. Once reassigned, the Court directed that Complaint No. 2 be filed as an amended complaint *1087 and consolidated with the original action. See Dkt. Nos. 54, 56. Because leave to file an amended complaint had neither been sought nor received, the Court sua sponte dismissed Complaint No. 2.
ecoNugenics then moved for leave to file a Second Amended Complaint (Complaint No. 3) under Fed. R. Civ. P. 15.[8] The proposed Complaint No. 3 further changed the allegations regarding administration of MCP and its alleged efficacy. In Complaint No. 3 ecoNugenics alleged "[t]he MCP provided by [Bioenergy] is consistent with recited requirements [i.e. molecular weights of the compounds] of the ecoNugenics patents" and that Bioenergy provides its MCP "in an amount ... sufficient to achieve the recited relief ...," but omits any reference to its prior factual allegation that independent testing had demonstrated that Bioenergy's MCP could not in fact perform the function of entering the bloodstream and binding to heavy metals and galectin-3.
Similarly, Complaint No. 3 offered a different allegation regarding administration of MCP by Bioenergy. Throughout, ecoNugenics alleges that Bioenergy "administers" MCP by "providing" it (i.e., selling it, making it available) to consumers: "administration may amount to no more than simply providing the composition-that is a proper understanding of the term 'administering' as it appears in the asserted patents herein." Complaint No. 3 ¶ 18, No. 17-cv-5378, Dkt. No. 63-1. This usage is ubiquitous in Complaint No. 3. Id.
Complaint No. 3 also asserted Bioenergy "selects" patients for administration of MCP through its advertising and promotion that targets persons who might think they will benefit from taking MCP given its alleged health benefits.
By order dated January 10, 2019, this Court denied the motion to amend as futile and in bad faith. Order, No. 17-cv-5378, Docket No. 72. The gist of the Court's findings was that ecoNugenics' Complaints Nos. 2 and 3 did not assert additional or clarifying allegations, but rather asserted new factual allegations that directly contradicted the prior factual allegations that had led to dismissal of Complaint No. 1:
The Court rejects ecoNugenics' argument that ... the new allegations, properly understood, do not contradict its original complaint ... the new allegations do not clarify or even amplify the original admissions made by ecoNugenics, they flatly contradict the original complaint. They are a transparent attempt to remove dispositive admissions and replace them with different allegations that would survive a Rule 12 motion to dismiss.
Id. at 16-17.
The Court also expressed skepticism regarding counsel's explanation of why they had filed an entirely new action, rather than move to amend the complaint, in response to the Court's order of dismissal:
After the Court granted Bioenergy's motion to dismiss the original complaint against it,[9] counsel for ecoNugenics believed there was no longer a live action in which to file an amended complaint and therefore filed an entirely *1088 new action.[10] While the Court finds this explanation suspect, particularly for an experienced practitioner such as ecoNugenics' counsel (Judge Ericksen had not entered judgment in the case; her order expressly applied only to Bioenergy whose dismissal was expressly "without prejudice"), it is not so absurd as to be rejected out of hand. It is plausible that counsel mistakenly but genuinely believed it was proper to file [Complaint No. 2] as a new action.
Following the Court's order denying amendment, ecoNugenics' filed a letter to the District Judge pursuant to L.R. 7.1(j) requesting permission to file a motion to reconsider the order dismissing Bioenergy, but two hours later, filed a voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A).ecoNugenics then filed a new action-Complaint No. 4-which was assigned to a new District Judge and Magistrate Judge. Complaint No. 4 is similar to Complaint No. 3 and specifically includes the amendments that this Court previously denied as being futile and in bad faith. Hr'g Tr. 28. The action commenced by the filing of Complaint No. 4 was re-assigned to the original District Judge and Magistrate Judge, over ecoNugenics' strenuous objection. The gist of ecoNugenics' rationale is that by filing its Rule 41 voluntary dismissal, the original action-in which the above-detailed proceedings occurred and allegations were made- was rendered a "nullity." ecoNugenics asserts everything that occurred in the prior action has vanished from the legal landscape, as if it never existed. Because that action never existed, ecoNugenics asserts, it is entitled to a legal "do-over" and is not bound by any factual admissions it made in the prior action.
As this Court made clear at the hearing on the Order to Show Cause, the issue of whether ecoNugenics is bound by its prior factual admissions (for example, by application of the doctrine of judicial estoppel)is not presently before this Court. There is no motion to dismiss this action and no assertion of judicial estoppel. Thus the question whether ecoNugenics' voluntary Rule 41(a) dismissal unbinds it from its prior admission has not been presented to this Court.
Rather, the precise question this Court raised in its Order to Show Cause was whether ecoNugenics and/or its counsel are, by this device, in contempt of the Court's orders, and if so, what sanction for that contempt is appropriate.
ANALYSIS
I. Contempt
18 U.S.C. § 401 authorizes the Court to punish contempt in three prescribed circumstances: (1) when a person misbehaves in such a way as to obstruct the administration of justice; (2) when an officer of the Court misbehaves while performing their official duties; and (3) when a person violates a lawful court order. 18 U.S.C. § 401. The first and second circumstances are not applicable in this case. First, attorneys are not officers of the court within the meaning of the contempt statute. See Cammer v. United States , 350 U.S. 399, 405-06, 76 S.Ct. 456, 100 L.Ed. 474 (1956). Second, misbehavior that obstructs the administration of justice typically involves conduct such as intemperate language, attempting to influence a judge, or other improprieties that are not necessarily direct violations of specific court orders. See, e.g., *1089 LeBer v. U.S. ex rel. Flemming , 170 F. 881, 889 (9th Cir. 1909) (attorney attempting to influence judge's action in pending case); Sharon v. Hill , 24 F. 726 (Cal. 1885) (attorney bringing firearm into court); United States v. Galin , 222 F.3d 1123 (9th Cir. 2000) (criminal defense attorney repeatedly violating procedures district court had established for conduct of trial). Thus, the only applicable ground on which this Court may consider punishing as a contempt is "disobedience or resistance to its lawful orders, decrees, or commands."
Moreover, 18 U.S.C.§ 401 establishes two classes of contempt-civil and criminal. Criminal contempt punishes a past offense by fine or imprisonment or both. Bloom v. State of Ill. , 391 U.S. 194, 201, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). In contrast, punishment in civil contempt is imposed to coerce compliance with a court directive. McComb v. Jacksonville Paper Co. , 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949). In other words, it is the purpose of the punishment rather than the character of the act punished that determines whether the contempt is civil or criminal. See id. ("Since the purpose [of civil contempt] is remedial, it matters not with what intent the defendant did the prohibited act."). Thus, violation of a Court order or decree can result in either civil or criminal contempt or, conceivably, both. E.g., United States v. Rose , 806 F.2d 931, 933 (9th Cir. 1986) ("The same conduct may result in both civil and criminal contempt charges."). In any event, criminal contempt is an extraordinary punishment that is used sparingly. Civil contempt punishment is only appropriate where the Court is seeking to compel compliance by a person involved in the proceedings before it.
A. Contempt in Case No. 19-cv-351
This action was filed on February 13, 2019. Compl. 26, Docket No. 1. The Court has issued no orders in this matter other than the Order to Show Cause. Accordingly, ecoNugenics' counsel cannot be in contempt for disobeying or resisting any court order or directive issued in this action. Rather, the potentially contemptuous act at issue here is ecoNugenics' act of filing a new action utilizing a complaint that this Court previously denied as futile in the original action. Since the mere act of filing a new complaint after a Rule 41(a)(1)(A) dismissal is not in itself improper, its impropriety must be assessed in the context of the Court's prior orders and directives issued in Case No. 17-cv-5378 and Case No. 18-cv-2377. Thus, the question of contempt turns, in part, on whether ecoNugenics' Rule 41(a)(1)(A) dismissal, which was filed as a means to undo this Court's orders in the original action, was so obviously improper as to justify a finding of contempt here.
A proper Rule 41(a)(1)(A) voluntary dismissal vitiates and annuls all prior proceedings and orders in the case and terminates jurisdiction over it for the reason that that case has become moot. See, e.g., A.B. Dick Co. v. Marr , 197 F.2d 498, 502 (2d Cir. 1952) ; Webb v. Nolan , 361 F.Supp. 418, 420 (M.D.N.C. 1972).However, while ecoNugenics' Rule 41(a)(1)(A) voluntary dismissal deprives the Court of jurisdiction in that action and, if proper, deprives the Court of any discretion not to allow the dismissal, that does not end the inquiry. Even though the Rule 41(a)(1)(A) dismissal has the effect of making it as if the action never existed, this Court has the authority and jurisdiction to enter contempt or Rule 11 sanctions or attorneys' fees despite the Rule 41(a)(1)(A) dismissal. See Dunn v. Gull , 990 F.2d 348, 350 (7th Cir. 1993) ; Bolivar v. Pocklington , 975 F.2d 28, 30 (1st Cir. 1992). But, if ecoNugenics' Rule 41(a)(1)(A) dismissal was *1090 proper, the order denying ecoNugenics' proposed amendment as futile was nullified and ecoNugenics cannot be held to have violated that order, the issue of contempt would appear to turn on whether the Rule 41(a)(1)(A) dismissal was proper.
B. Contempt based on violating Court orders in Case No. 17-cv-5378
1. The Plain Language of Rule 41(a)(1)(A)
Rule 41(a)(1)(A) provides that "the Plaintiff may dismiss an action without a court order by filing ... a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Thus, the plain language of the rule establishes that a voluntary dismissal without prejudice is proper when the defendant has neither filed a motion for summary judgment or served an Answer.
If the rule is applied literally, then ecoNugenics had an absolute right to voluntarily dismiss the original action as no defendant had served an Answer or moved for summary judgment. If ecoNugenics had an absolute right to voluntarily dismiss the action, its dismissal rendered the matter as if it never existed, the Court's prior order denying the amended complaint is null and void, and the act of filing the new action, which is quite clearly contrary to the spirit and intent of that order, cannot be contempt of court. There is considerable precedent that Rule 41(a)(1)(A) is to be construed literally. See, e.g., Safeguard Bus. Sys., Inc. v. Hoeffel , 907 F.2d 861, 864 (8th Cir. 1990) (noting that the court has "declined to consider whether certain actions of the court or parties constitute the equivalent of an answer or a motion for summary judgment"); Am. Soccer Co., Inc. v. Score First Enter., a Div. of Kevlar Indus. , 187 F.3d 1108, 1112 (9th Cir. 1999) ("We agree that Rule 41 does not authorize a court to make a case-by-case evaluation of how far a lawsuit has advanced ...."). The Eighth Circuit has left the window open for a broader construction of Rule 41(a)(1)(A), and, if asked to weigh in, may well consider the unique facts of this case to be what it had in mind when it wrote of "rare cases with extreme circumstances." Hoeffel , 907 F.2d at 864. But its admonition that such instances are "rare" and "extreme" counsel against viewing ecoNugenics' conduct as being disobedient to this Court's prior orders.
2. The Spirit and Intent of Rule 41(a)(1)(A)
Despite ample precedent holding that Rule 41(a)(1)(A) must be applied literally, there is also precedent that Rule 41(a)(1)(A) is not to be read literally. If there is a developing trend in applying Rule 41(a)(1)(A), it appears that courts are beginning to focus on the purpose and spirit of the rule rather than on its strict letter. Because there are ample cases stating that a court may consider the purpose of Rule 41, and because binding precedent from this Circuit has not completely foreclosed such an examination, this Court will analyze contempt from that vantage point as well. Compare, e.g., Crowe v. Blue Cross Hosp. Serv., Inc. of Missouri , 84 F.R.D. 623, 625 (E.D. Mo. 1979) and D.C. Electronics, Inc. v. Narton Corp. , 511 F.2d 294, 295-97 (6th Cir. 1975) with Finley Lines Jt. Protective Bd. Unit 200, Broth. Rwy. Carmen, Div. of Transp. Communications Union v. Norfolk Southern Corp., 109 F.3d 993 (4th Cir. 1997) and Tele-Views News Co. v. SRB TV Publishing Co. , 28 F.R.D. 303 (E.D. Penn. 1961). Such an exercise is further warranted as this Court has not found any case in any jurisdiction involving the precise scenario raised in this action.
To begin, Rule 41(a)(1)(A) allows a plaintiff to dismiss its action once without prejudice before the defendant and the *1091 court expend significant resources on the matter or have engaged the merits of the issues involved in the case. For instance, numerous courts have held that the sua sponte conversion of a defendant's 12(b)(6) dismissal motion to one for summary judgment cuts short a plaintiff's right to voluntarily dismiss the action under Rule 41(a)(1)(A), despite the defendant having not "served" a motion for summary judgment.[11] E.g., Exxon Corp. v. Maryland Cas. Co. , 599 F.2d 659, 661-62 (5th Cir. 1979) (noting that "the purpose of the rule is to permit a plaintiff to take the case out of court at an early stage if no other will be prejudiced"); Kolman v. Milwaukee Area Tech. Coll. , 548 F.Supp. 684, 685 (E.D. Wis.1982) (converting defendant's motion to dismiss to one for summary judgment because the motion was supported by affidavit, and thus declining plaintiff's attempt to voluntarily dismiss the action). The rationale in such cases is that, once an issue is joined and the merits raised, allowing the plaintiff to voluntarily dismiss the action under Rule 41(a)(1)(A) "would not be in accord with [the Rule's] essential purpose of preventing arbitrary dismissals after an advanced stage of a suit has been reached." Harvey Aluminum, Inc. v. Am. Cyanamid Co. , 203 F.2d 105, 107-09 (2d Cir. 1953).
In this case, the parties have clearly engaged on the merits of the action. Defendant argued, and the Court agreed, that Plaintiff had not plausibly alleged patent infringement because Plaintiff's factual assertions failed to support a legally cognizable claim for patent infringement. In addition, Defendant's motion asserted lack of patentable subject matter, an issue clearly directed to the merits of the action, in response to which Plaintiff filed a motion for summary judgment. The parties joined issue on the merits of the matter, and both the parties and the Court expended considerable resources adjudicating those merits, albeit at an early stage. Thus, under certain precedent, Plaintiff could be held to have lost the right to file a voluntary dismissal under Rule 41(a)(1)(A), at least as to the defendant who filed the Rule 12(b)(6) motion.
However, even applying those cases to this matter, the issue gets more complicated. While a Rule 12(b)(6) dismissal would normally be with prejudice, the Court's order here was expressly without prejudice,[12] thereby clearly allowing ecoNugenics to file a new complaint, consistent with the facts alleged, that would plausibly plead claims for patent infringement.[13]
*1092 In response, however, ecoNugenics attempted to file a new action which pleaded facts different from the prior complaint. The new Complaint was treated as an amended complaint, joined into the then-current action and dismissed as an improper amendment. ecoNugenics then moved to amend its Complaint, which amendment was denied as futile because it pleaded facts contrary to the facts on which the Court had previously dismissed ecoNugenics' initial Complaint. Thus, for a second time, the Court and the parties engaged on the merits of ecoNugenics' Complaint.
Moreover, the application of Rule 41(a)(1)(A) to this case is further complicated because, even though Defendant did not serve a motion for summary judgment, ecoNugenics did. The Court heard, considered, and denied ecoNugenics' motion for summary judgment on the issue of patentable subject matter precisely because the Court reached the merits of and granted Defendant's Rule 12(b)(6) motion. Thus, the parties and the Court also reached the merits of the dispute by resolving that summary judgment motion. While a literal reading of Rule 41(a)(1)(A) would not prohibit ecoNugenics from filing a voluntary dismissal (because it was not a defendant who filed the motion for summary judgment), the fact that a motion for summary judgment was heard and ruled upon would potentially bring this case within that precedent which finds Rule 41(a)(1)(A) not applicable once the parties have engaged on the merits of the dispute.
Moreover, ecoNugenics' activities subsequent to the Court's dismissal drive home the point that ecoNugenics' voluntary dismissal under Rule 41(a)(1)(A) may violate the spirit of that rule. ecoNugenics was clearly told it could not proceed on the very Complaint on which it is now attempting to proceed. While the original dismissal was without prejudice, the order prohibiting the amendment was with prejudice. At that point, the Court's clear indication to ecoNugenics was that it must either seek reconsideration of the order denying amendment or appeal that order directly to the District Judge. Initially, ecoNugenics began the process of seeking reconsideration, but two hours later filed its Rule 41(a)(1)(A) voluntary dismissal. As indicated, the question this raises is whether the Rule 41(a)(1)(A) dismissal was proper and, even if proper, whether it can be used to wipe away the Court's prior rulings where the parties had in fact engaged on the merits of the dispute. As described above, the answers to those questions are not only difficult, they are seemingly unresolved in the Eighth Circuit. A literal construction of Rule 41(a)(1)(A) gives ecoNugenics the absolute right to file a voluntary dismissal, while a more expansive reading of Rule 41(a)(1)(A) would not allow it. Ultimately, given the governing precedent in the Eighth Circuit, the Court is hesitant to find ecoNugenics in contempt.
One final observation is in order regarding ecoNugenics' Rule 41 voluntary dismissal. While the Court will not find ecoNugenics or its counsel in contempt, the Court has not determined-nor been asked to determine-whether the immediate action should be dismissed, either because the Rule 41(a)(1)(A) dismissal was void ab initio or because the doctrine of judicial estoppel bars the allegations in the current complaint. This Order is limited to the narrow question whether, given the uncertain state of the law when ecoNugenics filed its voluntary dismissal, it can be found to have deliberately violated the Court's prior orders.
II. Award of Attorneys' Fees and Costs Under Rule 41(d)
Rule 41(d) provides:
*1093 Costs of a Previously Dismissed Action. If a Plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the Court:
(1) May order the Plaintiff to pay all or part of the costs of that previous action ....
It is undisputed that ecoNugenics previously dismissed an action in this Court and has now filed this action, which is based on and includes the same claim against the same defendant. Order to Show Cause Hr'g Tr. 22-23; see also Order, No. 17-cv-5378 (D. Minn. Sept. 4, 2019), Docket No. 52. Accordingly, Rule 41(d) applies and this Court may make such an order as is, in its discretion, appropriate under that rule.
Decisions by this Court and by the Eighth Circuit have clearly held that the power to award "costs" under Federal Rules Civ. P. 41(d) includes the authority to award reasonable attorneys' fees. See, e.g., Evans v. Safeway Stores, Inc. , 623 F.2d 121, 121-22 (8th Cir. 1980) ; Robinson v. Bank of Am. N.A. , 2012 WL 2885128 (Dist. Minn. 2012) (Brisbois, MJ), adopted by 2012 WL 2885477 (Davis, J), affirmed by 553 Fed. Appx. 648 (8th Cir. 2014) ; In re Miraplex Product Liab. Litig. , 2012 WL 12788883 (D. Minn. 2012) (Noel, MJ) (contrasting the broad language of Rule 41(d) with the language of Rule 54(d), which states that the Court may award "costs-other than attorneys' fees -to the prevailing party"). ecoNugenics contests the Court's authority to award fees, arguing that such an award contravenes the spirit of 41(d), and that Defendant's attorneys' fees are exorbitant in any event.
The Court has now conclusively determined that an award of attorneys' fees is proper under Rule 41(d) in the circumstances of this case. Order, Apr. 30, 2019, at 5-6, Dkt. No. 37. Moreover, the purpose behind rule 41(d) makes it abundantly clear that an award of attorneys' fees is appropriate to protect a defendant from financing duplicitous and vexatious litigation and to allow the court to return that defendant to the same position it would occupy had the first action not existed. Simeone v. First Bank Nat'l Ass'n , 971 F.2d 103, 107-08 (8th Cir. 1992).Thus, the inquiry is whether there are costs and attorneys' fees incurred by the Defendant in the prior action that will not be useful in the newly filed action. Siepel v. Bank of Am., N.A. , 239 F.R.D. 558, 563 (E.D. Mo. 2006). Moreover, while no showing of bad faith is required in order for the Court to award fees, such a showing may be taken into consideration by the Court, id. ; Adams v. NY Educ. Dept. , 2009 WL 1203939 (S.D.N.Y. 2009), and this Court has already found that ecoNugenics' conduct was in bad faith. ecoNugenics did not appeal that finding. Regardless, an award of attorneys' fees is appropriate here because ecoNugenics' attempt to file a new action in 2018, its futile motion to amend its complaint, its decision to voluntarily dismiss the 2017 action, and then file an already discredited complaint have required Defendant to expend considerable time and effort on numerous motions. While the fees incurred in connection with the initial motion to dismiss were appropriately incurred, ecoNugenics has, since that time, embarked upon a litigation strategy that forced Defendant to expend considerable time and effort responding to inappropriately filed complaints in an action which ecoNugenics then rendered a nullity. Accordingly, this Court previously ordered that all fees incurred in Case No. 17-cv-5378 after the Court granted Defendant's motion to dismiss without prejudice, are recoverable under Rule 41(d).
Turning to ecoNugenics' objection that the fees incurred during that period were exorbitant, the *1094 Court makes the following findings. In Case No. 17-cv-5378, during the period from September 4, 2018 to January 23, 2019 (the date on which ecoNugenics filed its voluntary dismissal) Defendants incurred $ 86,219.50 in attorneys' fees. The Court is familiar with the billing rates charged by attorneys of similar experience in the Minneapolis-St. Paul Twin Cities metropolitan area and finds the billing rates charged by Defendant's counsel are reasonable and appropriate. In addition, the Court has reviewed in camera each and every billing entry made by Defendant's counsel in the period September 4, 2018 and January 23, 2019, and finds that with the exception of five billing entries between September 4, 2018, and September 10, 2018, all billed tasks were incurred as a result of ecoNugenics' conduct described above, were rendered useless by ecoNugenics' voluntary dismissal, were reasonable and appropriate in the amount of time expended, and were not unnecessarily duplicative. The Court hereby awards fees in the amount of $ 84,763.00 to be paid by ecoNugenics as previously ordered by the Court.[14]

Since the hearing on this Court's Order to Show Cause, local counsel for ecoNugenics have withdrawn-with substitution-from continued representation. Because this Court had determined that no contempt sanction will issue, it will not delve into what effect withdrawal would have had on the issue of contempt sanctions for the now withdrawn counsel.

Specifically, this Court's orders found at docket Nos. 52, 53, 54, 56, 72 and 78 of case no. 17-cv-5378 and at Docket No. 15 of case no. 18-cv-2377.

No. 19-cv-0351.

U.S. Patent Nos. 6,652,029 ; 7,026,302 ; 7,452,871 ; 8,426,567 ; 9,427,449 and 9,649,329.

This initial factual assertion only clearly alleges indirect infringement of the patents by Bioenergy; in its legal claims, however, ecoNugenics' original complaint purported to also plead direct infringement by Bioenergy.

Bioenergy was the only named defendant to move for dismissal because it was the only defendant that had been served with ecoNugenics' complaint. See Motion to Dismiss, Dkt. No. 27.

For ease of reference and clarity, the serial complaints filed by ecoNugenics will be referenced by number in the order in which they were filed. Thus, the complaint filed on September 24, 2018-the second complaint to be filed-is referred to as Complaint No. 2.

ecoNugenics' motion failed to comply with Local Rule 15.1 because counsel failed to file a proper redlined version of the proposed Complaint No. 3. This failure frustrated the Court's ability to directly compare proposed Complaint No. 3 with original Complaint No. 1, thereby obscuring the fundamental inconsistencies between the original allegations and the proposed new allegations which were intended to cure those defects.

At that time, Bioenergy was the only defendant who had been served and who had appeared in this case.

Counsel also asserted that he did not believe a motion to reconsider would have been appropriate because there was no newly discovered evidence and no manifest error of law. Therefore, he believed his only option was to file a new complaint as a new action.

One commentator has noted that, for purposes of Rule 41(a)(1)(A), courts do not view a motion to dismiss as either an Answer or motion for summary judgment unless formally converted by the consideration of matters outside the pleadings. 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2363 (3d ed.). This is so despite the defendant's option to assert the defenses listed in Rule 12(b) in either its answer or by motion. Id. Query whether such reasoning exalts form over function.

Order at 16, No. 17-cv-5378 (D. Minn. Sept. 4, 2019), Docket No. 52.

ecoNugenics construed the Court's order to allow it to plead facts that were inconsistent with the facts alleged in the initial Complaint. However, that is clearly contrary to precedent. The Court permitted Plaintiff to file a new complaint that would be consistent with the prior factual allegations but nonetheless state a claim. Such factual allegations might have included allegations that more recent testing of Defendants' allegedly infringing MCP showed that it was in fact capable of entering mammalian blood circulation and binding heavy metals and other toxins or, to name the direct infringers in the Complaint so as to allow claims of indirect infringement against Bioenergy to proceed. But the Court's order did not allow Plaintiff to plead facts opposite to those already pleaded.

All further proceedings in this action are stayed pursuant to Rule 41(d) pending payment of those fees and costs. If payment is not made within 60 days of this Order, it will be recommended that the action be dismissed for lack of prosecution.